# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00474-CV

**Martin Lara, Sr.; Martin Lara, Jr.; and Coast to Coast Insurance Services, LLC, Appellants**

**v.**

**Streamline Insurance Services, LLC; and Streamline Insurance Services, Inc., Appellees**

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-000228, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellees Streamline Insurance Services, LLC and Streamline Insurance Services, Inc. (Streamline) sued appellants Martin Lara, Sr.; Martin Lara, Jr.; and Coast to Coast Insurance Services, LLC, (Appellants) for knowing participation in breach of fiduciary duty and tortious interference with employment contracts. Appellants moved to dismiss Streamline's claims under section 27.003 of the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code § 27.003.[1] The district court denied the motion, and Appellants appeal. For the reasons stated herein, we affirm in part, reverse and render in part, and remand.

---

[1] The TCPA was amended in the 2019 legislative session, but those amendments do not apply to this lawsuit, which was filed before the amendments' effective date. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11, 12, 2019 Tex. Gen. Laws 684, 687 (amendments to TCPA apply "only to an action filed on or after" September 1, 2019). Accordingly, this opinion cites to the version of the statute in effect before September 1, 2019.

## BACKGROUND

After working in the transportation industry and owning a trucking company for many years, Lara, Sr., opened a diesel mechanic shop with Lara, Jr. In 2017, the Laras decided to expand their business to offer insurance services to their transportation industry clients and formed Coast to Coast Insurance, LLC. Among the people they consulted to learn more about the insurance industry was Rafael Molina, who had been friends with Lara, Sr., for about ten years. They first met when Lara, Sr., had purchased insurance for himself through Streamline, where Molina was employed as an insurance agent. In addition to sharing information about the insurance industry, Molina helped the Laras procure office space for Coast to Coast in New Mexico. The parties dispute the extent of Molina's involvement in Coast to Coast.

After opening Coast to Coast, Lara, Sr., was approached by a woman named Laura Martinez, whose boyfriend had been friends with Lara, Sr. Martinez wanted to work for Coast to Coast. She had been an insurance agent since 1993 and had most recently been employed by Streamline. Martinez's last day at Streamline was January 22, 2018. Lara, Sr., hired her in June 2018.

Streamline sued the Laras, Coast to Coast, Molina, and Martinez in January 2019, accusing them of luring customers away from Streamline. Streamline's claims against Molina and Martinez included claims for breach of contract based on their employment agreements with Streamline and a claim against Molina for breach of fiduciary duty. Streamline sued Appellants for knowing participation in Molina's breach of fiduciary duty and tortious interference with Molina's and Martinez's employment contracts. Appellants filed a motion to dismiss under the TCPA, asserting that Streamline's lawsuit is based on, relates to, or is in response to Appellants' exercise of the right of association and right of free speech. *See id.* § 27.003. Streamline

2

responded, urging that the TCPA does not apply; the commercial speech exemption applies such that Appellants cannot invoke the TCPA's protections; if the TCPA applies, Streamline has established its prima facie case; and Appellants have not established by a preponderance of the evidence a valid defense. *See id.* § 27.005. Streamline also sought permission to conduct discovery pursuant to section 27.006(b) of the TCPA. The district court allowed Streamline to conduct discovery. Following a hearing, the district court denied Appellants' motion to dismiss. On appeal, Appellants argue that the district court erred because (1) the TCPA applies and the commercial speech exemption does not apply; (2) Streamline did not establish a prima facie case for its claims; and (3) Appellants proved each element of a defense of justification by a preponderance of the evidence.

## ANALYSIS

Generally, "[r]eviewing a TCPA motion to dismiss requires a three-step analysis." *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). As a threshold matter, the moving party must show by a preponderance of the evidence that the TCPA properly applies to the legal action against it. Tex. Civ. Prac. & Rem. Code § 27.005(b); *see In re Lipsky*, 460 S.W.3d 579, 586-87 (Tex. 2015) (orig. proceeding) (stating the movant must show by a preponderance of the evidence that the nonmovant's claim is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right to petition, or the right of association). If the moving party meets that burden, the nonmoving party must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code § 27.005(c). If the nonmoving party satisfies that requirement, the burden shifts back to the moving party to prove each essential element of any valid defense by a preponderance of the evidence. *Id.* § 27.005(d).

3

"Intertwined with and overlying this dismissal process is the TCPA provision exempting certain actions from the TCPA's application." *Morrison v. Profanchik*, 578 S.W.3d 676, 680 (Tex. App.—Austin 2019, no pet.) (citing Tex. Civ. Prac. & Rem. Code § 27.010). Among the exemptions provided by section 27.010 of the TCPA is the "commercial speech" exemption:

> This chapter does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

Tex. Civ. Prac. & Rem. Code § 27.010(b); *see State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018) (noting that if TCPA exemption applies, a movant "cannot invoke TCPA's protections").

"In determining whether a legal action should be dismissed under [the TCPA], the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). We review de novo whether each party carried its assigned burden. *Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 217 (Tex. App.—Austin 2017, no pet.).

**The TCPA's Applicability**

Appellants argue the TCPA applies to Streamline's claims against them because the claims implicate Appellants' right of association and right of free speech. In analyzing whether the TCPA applies, we are mindful that "[t]he basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). The "requirement that a defendant moving for dismissal show the

4

basis of a legal action 'by a preponderance of the evidence' must be read in harmony with Section 27.006(a)," *id.*, which provides that "the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based," Tex. Civ. Prac. & Rem. Code § 27.006(a). Therefore, "[w]hen it is clear from the plaintiff's pleadings that the action is covered by the [TCPA], the defendant need show no more." *Hersch*, 526 S.W.3d at 467.

### *Whether the Claims are Based on a Protected Right*

We first address whether Streamline's action is based on, relates to, or is in response to Appellants' exercise of the right of association. The TCPA defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." Tex. Civ. Prac. & Rem. Code § 27.001(2). The TCPA provides that "'[c]ommunication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). Appellants assert that Streamline's claims implicate their exercise of the right of association as defined by the TCPA because Streamline's claims depend on communications made between Appellants and Molina or Appellants and Martinez as they pursued their common interests in developing and maintaining a competing insurance provider.

In its petition, Streamline emphasized in its causes of action against Molina and Martinez that they had access to confidential information and specialized training as a result of their positions with Streamline and asserted that as a result of their breaches, Martinez and Molina have caused Streamline "unfair loss of its competitive advantage" and harm to its

5

valuable goodwill. Streamline pled that Appellants knowingly participated in breach of fiduciary duty because they "schem[ed] to form a competing insurance business while Molina was still employed by [Streamline,] using Molina's position of trust to solicit [Streamline's] customers"; they "encourage[ed] or assist[ed] Molina to solicit or induce Laura Martinez to resign from [Streamline] and hire Martinez to join Coast to Coast"; and they "encourage[ed] or assist[ed] Molina to harm and interfere with [Streamline's] customer relationships and valuable goodwill." Streamline pled that Appellants tortiously interfered with Molina's and Martinez's employment contracts with Streamline by engaging in conduct that violated the contracts' "non-solicitation" and "no hiring" clauses. The petition specifically asserts that Molina contracted with at least one Streamline client to sell insurance policies issued by Coast to Coast, rather than Streamline, while Molina was employed by Streamline, and the petition urges that Appellants conspired with Molina to engage in this scheme. The petition also alleges that Appellants, working with Molina while he was bound by his contract with Streamline, continued to "lure away" Streamline's customers to their new business and that they "conspired to hire" former Streamline employee Martinez.

Appellants contend that these allegations—that they induced Martinez to leave Streamline and join Coast to Coast, that they encouraged Molina to harm and interfere with Streamline's customer relationships, and that they have conspired with Molina and Martinez to lure away Streamline's customers ostensibly with the use of confidential information or specialized training acquired while Molina and Martinez worked for Streamline—are based on, related to, or in response to communications between Appellants, Martinez, and Molina as they allegedly joined together to collectively express, promote, pursue, or defend their common interests in developing business for Coast to Coast. We agree and therefore conclude that

6

Streamline's allegations implicate Appellants' right of association as defined by the TCPA. *See Elite Auto Body, LLC. v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 205 (Tex. App.—Austin 2017, pet. dism'd) (holding that allegations of communications among defendants through which they lured a competitor's employees to their business and communications through which defendants shared or used confidential information constituted exercise of the right of association). Having determined that Streamline's claims are based on, in response to, or related to Appellants' right of association, we need not consider whether the claims also implicate Appellants' right of free speech.

On appeal, Streamline does not dispute the TCPA's application as an initial matter,[2] but instead urges that (1) the commercial speech exemption applies and (2) the TCPA is preempted by the Covenants not to Compete Act. We therefore next address these arguments for why the TCPA should not apply to this case.

### Commercial Speech Exemption

The commercial speech exemption expressly provides that the TCPA "does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services," but only "if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction." Tex. Civ. Prac. & Rem. Code § 27.010(b). The Texas Supreme Court has construed the exemption to apply when:

> (1) the defendant was primarily engaged in the business of selling or leasing goods, (2) the defendant made the statement or engaged in the conduct on which

---

[2] Although Streamline does not dispute the TCPA's applicability, Appellants had the burden to show that the TCPA applies to be entitled to dismissal.

7

the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018). "The burden to establish the commercial-speech exemption is on the party relying on it." *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 887 (Tex. App.—Austin 2018, pet. denied).

In arguing that the commercial speech exemption applies, Streamline states that its claims are "straightforward," explaining that "Molina, while a fiduciary, encouraged Streamline's customers to switch to Coast to Coast" and "did so as an agent of [Appellants]." Thus, Streamline asserts on appeal that Molina acted on behalf of Appellants and that Appellants "participated by signing up those customers Molina wrongfully diverted." Streamline continues, "[t]he wrongdoing is Coast to Coast participating in Molina's tortious conduct which is itself commercial speech." Streamline also argues that Martinez "violated her customer non-solicitation agreement by selling to and servicing insurance accounts for the Streamline customers who Molina wrongfully diverted," thereby committing wrongdoing through "commercial speech" as "Coast to Coast's agent." The appellate record does not reflect Streamline having argued to the district court that Martinez or Molina made any actionable statements on behalf of or as agents for Appellants.[3] Because it was not raised in the district

---

[3] We note that Streamline attached to its TCPA motion the affidavit of a customer who, upon calling Streamline to purchase insurance, was directed by Streamline's employee, Molina, to call Martinez. The customer called Martinez as directed by Molina and purchased insurance through Coast to Coast. In that affidavit, the customer opines, "I believe Rafael [Molina] was acting as agent for Coast to Coast." Although Appellants objected to that portion of the affidavit, the record does not show that the district court ruled on the objection. Assuming this line in an

8

court, we do not consider Streamline's argument on appeal that Martinez and Molina committed wrongdoing as Appellants' agents.

In addition to its agency argument, Streamline states:

> the uncontroverted evidence shows that (1) Coast to Coast, like Streamline, was primarily engaged in the business of selling insurance products or insurance services; (2) Coast to Coast and its agents made the actionable statements or engaged in the conduct at issue in their capacity as sellers of these insurance products or services; (3) the statements or conduct at issue arose out of a commercial transaction involving the kind of products or services Coast to Coast provides (i.e., improperly soliciting Streamline's actual and potential customers to buy insurance products or services from Coast to Coast instead of Streamline); and (4) the intended audience was Coast to Coast's actual or potential customers for the kind of insurance products or services that Coast to Coast and Streamline provide.

Appellants assert that several of the actionable statements they allegedly made did not qualify as "commercial speech" to the extent that the statements were directed at Molina rather than Coast to Coast's actual or potential customers. As to knowing participation in a breach of fiduciary duty, the alleged actionable statements by Appellants included that they:

- "schem[ed] to form a competing insurance business while Molina was still employed by [Streamline,] using Molina's position of trust to solicit [Streamline's] customers";

- "encourage[d] or assist[ed] Molina to solicit or induce Laura Martinez to resign from [Streamline] and hire Martinez to join Coast to Coast"; and

affidavit could preserve Streamline's agency argument for appeal, we determine that the customer's conclusory belief does not establish applicability of the commercial speech exemption by imputing Molina's statements to Appellants. *See In re Lipsky*, 460 S.W.3d 579, 592-93 (Tex. 2015) (orig. proceeding) (holding that baseless opinions do not create fact questions (citing *Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013) ("Conclusory statement[s] . . . [are] insufficient to create a question of fact to defeat summary judgment."))).

9

- "encourage[ed] or assist[ed] Molina to harm and interfere with Plaintiffs' customer relationships and valuable goodwill."

As to its claim for tortious interference with employment contracts, Streamline alleges that Appellants "engag[ed] in conduct that violated the contracts' non-solicitation and no hiring clauses," including the specific assertion that Molina "contracted with" at least one Streamline client to sell insurance policies issued by Coast to Coast, rather than Streamline, while Molina was employed by Streamline; and that Appellants, working with Molina while he was bound by his contract with Streamline, continued to "lure away" Streamline's customers to their new business and that they "conspired to hire" former Streamline employee Martinez. Appellants' statements and conduct, as pled by Streamline, were directed to Molina and Martinez, rather than to Appellants' customers or potential customers. Accordingly, Streamline has not carried its burden to establish the fourth element of the commercial speech exemption, and the exemption therefore does not apply. *See Grant*, 556 S.W.3d at 890 (concluding commercial speech exemption did not apply where plaintiffs failed to demonstrate that the intended audience of the statements or conduct were actual or potential customers); *Elite Auto*, 520 S.W.3d at 206 n.75 (noting that commercial speech exemption would not apply where the intended audience of the alleged statements or conduct is not actual or potential customers).

### Preemption by the Covenants Not to Compete Act

Streamline asserts that the Covenants Not to Compete Act (CNCA) precludes application of the TCPA. *See* Tex. Bus. & Com. Code §§ 15.50-.52. Streamline argues that section 15.52 of the CNCA indicates that the CNCA preempts and excludes any other procedures and remedies, including the TCPA, in an action to enforce a Texas covenant not to compete.

10

Appellants assert that Streamline has waived that argument by not raising it before the district court in response to their TCPA motion. *See* Tex. R. App. P. 33.1 (preservation of appellate complaints).

Appellate courts do not consider issues that were not raised in the court below, though parties may construct new arguments on appeal in support of issues properly preserved. *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014). Although Streamline argued that the CNCA preempts the TCPA in responding to the TCPA motion to dismiss filed by Martinez, the record before us contains nothing to show that Streamline mentioned the CNCA with reference to the Appellants or the claims against them. To have preserved their argument that preemption by the CNCA serves as an alternative basis for denying Appellants' motion to dismiss, Streamline was required to present the argument to the district court. Because it did not, we will not consider this argument on appeal. *See Grant*, 556 S.W.3d at 890-91 (concluding that the argument that the CNCA preempts the TCPA was waived when not first presented to the trial court); *Entergy Gulf States, Inc. v. Public Util. Comm'n*, 173 S.W.3d 199, 210 (Tex. App.—Austin 2005, pet. denied) (noting that preemption argument that affects choice of law can be waived (citing *Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 545 (Tex. 1991) (noting that preemption argument that affects choice of forum rather than choice of law is not waivable and can be raised for first time on appeal))).[4]

---

[4] *See also RigUp, Inc. v. Sierra Hamilton, LLC*, __ S.W.3d ___, No. 03-19-00399-CV, 2020 Tex. App. LEXIS 5376 at * 15 (Tex. App. —Austin, July 16, 2020, no pet. h.) (holding the CNCA does not preempt the TCPA because "the statutes govern different stages of the proceedings").

**Prima Facie Case**

Having concluded that Appellants met their burden of showing that the TCPA applies to Streamline's claims against them, we turn to the second step of the TCPA analysis and consider whether Streamline has established by clear and specific evidence a prima facie case for each essential element of its claims for knowing participation in a breach of fiduciary duty and tortious interference with a contract. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c). The words "clear" and "specific" in the context of the TCPA mean, for the former, "unambiguous," "sure," or "free from doubt" and, for the latter, "explicit" or "relating to a particular named thing." *Lipsky*, 460 S.W.3d at 590. A "prima facie case" "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* It is "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (internal quotation marks omitted). To determine whether this burden is met, we consider the pleadings and any supporting and opposing affidavits. *Id.* § 27.006(a). However, "pleadings that might suffice in a case that does not implicate the TCPA may not be sufficient to satisfy the TCPA's 'clear and specific evidence' requirement." *Lipsky*, 460 S.W.3d at 590. "[M]ere notice pleading—that is, general allegations that merely recite the elements of a cause of action—will not suffice. Instead, a plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 590-91.

### *Knowing Participation in Breach of Fiduciary Duty*

A claim for knowing participation in breach of fiduciary duty "arises from the rule set forth in *Kinzbach Tool Co. v. Corbett-Wallace Corp.*" *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 720-721 (Tex. App.—Austin 2001, pet. denied) (citing 160 S.W.2d 509, 514 (Tex. 1942)). "It is settled as the law of this State that where a third party knowingly

12

participates in the breach of duty of a fiduciary, such third party becomes a joint tort-feasor with the fiduciary and is liable as such." *Kinzbach*, 160 S.W.2d at 514. "To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Meadows v. Hartford Life Ins.*, 492 F.3d 634, 639 (5th Cir. 2007) (citing *Wootten*, 59 S.W.3d at 722).

Streamline pled that Molina served as its employee for ten years, managed its office in New Mexico, and was provided confidential company information in his role as branch manager. Appellants do not dispute that this constitutes at least the minimum quantum of evidence necessary to support a rational inference that Molina had a fiduciary duty to Streamline. However, Appellants argue that Streamline has not shown that "any of the Appellants knew Molina owed that duty during the relevant time frame or knowingly participated in [his] breach." Streamline argues on appeal that Molina breached his fiduciary duty because "he lured away and solicited Streamline's actual or potential customers like CZ Star to purchase insurance through Coast to Coast instead of Streamline, while he was still employed by Streamline."

The Laras had each purchased insurance from Streamline and knew that Molina was employed there as an insurance agent. Streamline alleges that in August 2018, while Molina was employed by Streamline, Molina directed a prospective customer who wanted to buy insurance from Streamline to call Martinez, who was then employed by Coast to Coast, with the result that the customer purchased a policy through Coast to Coast instead. The customer owned a company called CZ Star, LLC. The customer's affidavit states that Martinez told the customer that Molina would receive a fee as a result of the customer's insurance purchase. On these facts,

13

where Appellants knew that Molina was an agent for Streamline and that he on at least one occasion directed a customer to Coast to Coast instead, we conclude that Streamline has established the minimum quantum of evidence necessary to support a rational inference that the Appellants were aware of Molina's alleged breach. We also conclude that these facts established the minimum quantum of evidence necessary to support a rational inference that Coast to Coast, through its employee Martinez, knowingly participated in Molina's alleged breach.

However, those facts do not show by clear and specific evidence a prima facie case that Lara, Sr., or Lara, Jr., knowingly participated in the alleged breach. In arguing that Lara, Sr., knowingly participated in the alleged breach, Streamline relies on an affidavit with an attached notarized letter stating that Molina arranged to lease office space for Coast to Coast's New Mexico office "on behalf of" Lara, Jr. Appellants argue that Molina made these arrangements as a favor to his friend, Lara, Sr., because the Laras lived in Texas, while Molina lived in New Mexico. In his deposition, which is attached to Streamline's response to the TCPA motion, Lara, Sr., testified that he "got help" in leasing the office from Molina because "he's a friend of mine." He further explained that Appellants "didn't utilize [the New Mexico office] that much because after we got it, Astorga [an employee of Coast to Coast] didn't stay with us." According to Lara, Sr.'s, testimony, Astorga was to be the sole employee in the New Mexico office. Streamline does not allege or explain how the act of assisting in securing office space in New Mexico constituted a breach of Molina's fiduciary duty to Streamline. The record does not show that assisting the Laras in leasing the New Mexico office was related to Molina's luring away of customers from Streamline. Nor does the record contain other evidence showing that the Laras knowingly participated in the alleged breach. Accordingly, Streamline has not met its

14

burden to establish by clear and specific evidence a prima facie case that the Laras knowingly participated in Molina's alleged breach.

### *Tortious Interference with a Contract*

To establish a tortious interference claim, Streamline must show by clear and specific evidence that (1) a contract existed between Molina and Streamline and between Martinez and Streamline; (2) Appellants willfully and intentionally interfered with the contracts; (3) the interference proximately caused Streamline damage; and (4) Streamline suffered actual damage or loss. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002) (describing elements of a claims for tortious interference with a contract). Streamline attached copies of its contracts with Martinez and Molina to its response to the motion to dismiss. The contracts suffice to show by clear and specific evidence that a contract existed between Streamline and each of its former employees.

In addition, Streamline has also shown by clear and specific evidence a prima facie case that Coast to Coast willfully and intentionally interfered with the contracts. Streamline alleged and attached to its response to the TCPA motion an affidavit supporting its claim that Molina directed a prospective Streamline customer to call Martinez, who then sold the customer an insurance policy on behalf of Coast to Coast. The affiant further averred that Martinez mentioned that Molina would receive a fee for the sale of the policy, thereby demonstrating Martinez's knowledge of Molina's involvement in that transaction. Martinez was aware that Streamline asked its employees, including her, to sign contracts, the provisions of which precluded its employees from "directly or indirectly" "seek[ing] to acquire any interest in any Active Prospective Client of [Streamline]" for two years from the date when they were no

longer employed by Streamline or its successors. Streamline argues that because Martinez was an employee, her knowledge should be imputed to Coast to Coast. We determine that, for the purposes of the TCPA, Streamline has established by clear and specific evidence a prima facie case that Coast to Coast willfully and intentionally interfered with Molina's and Martinez's contracts.

The same transaction in which Molina referred a prospective customer to Martinez also establishes by clear and specific evidence of a prima facie case that Coast to Coast's interference with the contracts proximately caused Streamline actual damages. The customer averred in his affidavit that the premium for the policy he purchased was $2,650 and that he intended to purchase insurance from Streamline but learned upon receiving the insurance identification card that the issuer of the policy was Coast to Coast, not Streamline. We conclude that Streamline established by clear and specific evidence a prima facie case for each essential element of its claim for tortious interference with a contract against Coast to Coast.

However, Streamline did not provide clear and specific evidence to support its theory that the Laras were aware of the contracts between Streamline and its employees. Thus, Streamline did not establish by clear and specific evidence a prima facie case for each essential element of its claim for tortious interference with a contract against the Laras.

**Valid Defense**

Appellants argue that they were entitled to dismissal of Streamline's claims for tortious interference with a contract because they proved each essential element of the defense of justification by a preponderance of the evidence. *See* Tex. Civ. Prac & Rem. Code § 27.005(d). Because we have concluded that Streamline has not established its prima facie case for its

16

tortious interference claim against the Laras, we consider this defense solely as it relates to Coast to Coast.

"[T]he affirmative defense of justification can be based on the exercise of either: (1) one's own legal rights; or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken." *Community Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 688 (Tex. 2017) (citing *Prudential Ins. Co. of Am. v. Financial Rev. Servs., Inc.*, 29 S.W.3d 74, 78 (Tex. 2000) (citing *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 211 (Tex. 1996))). Coast to Coast asserts that it falls under the second category of the defense because it "had no knowledge or awareness of the terms of" the contracts at issue. As discussed above, the evidence includes an affidavit averring that Martinez, while serving as an employee of Coast to Coast, sold a policy to a prospective Streamline customer and allegedly acknowledged that Molina would receive a fee from that sale at a time when both Martinez and Molina were bound by a non-solicitation clause in their contracts with Streamline. We conclude that on the record before us in this TCPA motion, Coast to Coast has not proved by a preponderance of the evidence that it had no awareness of the terms of the contracts. Consequently, Coast to Coast has not proved that it is entitled to rely on the defense of justification. Accordingly, we hold that the district court did not err in denying Appellants' motion to dismiss as to the claims against Coast to Coast.

## CONCLUSION

Based on our holdings above, we reverse in part the district court's order denying Appellants' TCPA motion to dismiss and render judgment dismissing Streamline's claims against the Laras for knowing participation in a breach of fiduciary duty and tortious interference

17

with a contract.  We affirm the district court's denial of the motion to dismiss the claims against Coast to Coast.  We remand the case to the trial court for further proceedings consistent with this opinion.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed in part, Reversed and Rendered in Part, Remanded

Filed:   August 26, 2020