# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## ON REHEARING

---

## NO. 03-19-00474-CV

---

**Martin Lara, Sr.; Martin Lara, Jr.; and
Coast to Coast Insurance Services, LLC, Appellants**

**v.**

**Streamline Insurance Services, LLC; and Streamline Insurance Services, Inc., Appellees**

---

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-000228, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

We withdraw our previous opinion and judgment issued on August 26, 2020, and substitute the following opinion and judgment in their place. We deny the motion for rehearing filed by appellees Streamline Insurance Services, LLC and Streamline Insurance Services, Inc. (collectively, Streamline).

Streamline sued appellants Martin Lara, Sr.; Martin Lara, Jr.; and Coast to Coast Insurance Services, LLC (Appellants) for knowing participation in breach of fiduciary duty and tortious interference with employment contracts. Appellants moved to dismiss Streamline's claims under Section 27.003 of the Texas Citizens Participation Act (TCPA). *See* Tex. Civ.

Prac. & Rem. Code § 27.003.[1] The district court denied the motion, and Appellants appeal. For the reasons stated herein, we affirm in part, reverse and render in part, and remand.

## BACKGROUND

After working in the transportation industry and owning a trucking company for many years, Lara, Sr., opened a diesel mechanic shop with Lara, Jr. In 2017, the Laras decided to expand their business to offer insurance services to their transportation industry clients. Among the people the Laras consulted to learn more about the insurance industry before opening Coast to Coast Insurance, LLC was Rafael Molina, who had been friends with Lara, Sr., for about ten years. They first met when Lara, Sr., had purchased insurance for himself through Streamline, where Molina was employed as an insurance agent until September 10, 2018. After forming Coast to Coast in 2018, Lara, Sr., was approached by a woman named Laura Martinez, whose boyfriend had been friends with Lara, Sr. Martinez wanted to work for Coast to Coast. She had been an insurance agent since 1993 and had most recently been employed by Streamline. Martinez's last day at Streamline was January 22, 2018. Lara, Sr., hired her in June 2018. Molina helped the Laras procure office space for Coast to Coast in New Mexico in October 2018. The parties dispute the extent of Molina's involvement in Coast to Coast.

Streamline sued the Laras, Coast to Coast, Molina, and Martinez in January 2019, accusing them of luring customers away from Streamline. Streamline's claims against Molina and Martinez included claims for breach of contract based on their employment agreements with

---

[1] The TCPA was amended in the 2019 legislative session, but those amendments do not apply to this lawsuit, which was filed before the amendments' effective date. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11, 12, 2019 Tex. Gen. Laws 684, 687 (amendments to TCPA apply "only to an action filed on or after" September 1, 2019). Accordingly, this opinion cites to the version of the statute in effect before September 1, 2019.

Streamline and a claim against Molina for breach of fiduciary duty. Streamline sued Appellants for knowing participation in Molina's breach of fiduciary duty and tortious interference with Molina's and Martinez's employment contracts. Appellants filed a motion to dismiss under the TCPA, asserting that Streamline's lawsuit is based on, relates to, or is in response to Appellants' exercise of the right of association and right of free speech. *See id.* § 27.003. Streamline responded, urging that (1) the TCPA does not apply; (2) the commercial-speech exemption applies such that Appellants cannot invoke the TCPA's protections; (3) if the TCPA applies, Streamline has established its prima facie case; and (4) Appellants have not established by a preponderance of the evidence a valid defense. *See id.* § 27.005. Streamline also sought permission to conduct discovery pursuant to Section 27.006(b) of the TCPA. The district court allowed Streamline to conduct discovery. Following a hearing, the district court denied Appellants' motion to dismiss. On appeal, Appellants argue that the district court erred because (1) the TCPA applies and the commercial-speech exemption does not apply, (2) Streamline did not establish a prima facie case for its claims, and (3) Appellants proved each element of a defense of justification by a preponderance of the evidence.

**ANALYSIS**

Generally, "[r]eviewing a TCPA motion to dismiss requires a three-step analysis." *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). As a threshold matter, the moving party must show by a preponderance of the evidence that the TCPA properly applies to the legal action against it. Tex. Civ. Prac. & Rem. Code § 27.005(b); *see In re Lipsky*, 460 S.W.3d 579, 586-87 (Tex. 2015) (orig. proceeding) (stating movant must show by preponderance of evidence that nonmovant's claim is based on, relates to, or is in response to movant's exercise of right of free

3

speech, right to petition, or right of association). If the moving party meets that burden, the nonmoving party must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code § 27.005(c). If the nonmoving party satisfies that requirement, the burden shifts back to the moving party to prove each essential element of any valid defense by a preponderance of the evidence. *Id.* § 27.005(d).

"Intertwined with and overlying this dismissal process is the TCPA provision exempting certain actions from the TCPA's application." *Morrison v. Profanchik*, 578 S.W.3d 676, 680 (Tex. App.—Austin 2019, no pet.) (citing Tex. Civ. Prac. & Rem. Code § 27.010). Among the exemptions provided by Section 27.010 of the TCPA is the "commercial speech" exemption:

> This chapter does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

Tex. Civ. Prac. & Rem. Code § 27.010(b); *see State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018) (noting that if TCPA exemption applies, a movant "cannot invoke TCPA's protections").

"In determining whether a legal action should be dismissed under [the TCPA], the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a). We review de novo whether each party carried its assigned burden. *Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 217 (Tex. App.—Austin 2017, no pet.).

4

**The TCPA's Applicability**

Appellants argue the TCPA applies to Streamline's claims against them because the claims implicate Appellants' right of association and right of free speech. In analyzing whether the TCPA applies, we are mindful that "[t]he basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). "Section 27.005(b)'s requirement that a defendant moving for dismissal show the basis of a legal action 'by a preponderance of the evidence' must be read in harmony with Section 27.006(a)," *id.*, which provides that "the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based," Tex. Civ. Prac. & Rem. Code § 27.006(a). Therefore, "[w]hen it is clear from the plaintiff's pleadings that the action is covered by the [TCPA], the defendant need show no more." *Hersh*, 526 S.W.3d at 467.

### *Whether the Claims are Based on a Protected Right*

We first address whether Streamline's action is based on, relates to, or is in response to Appellants' exercise of the right of association. The TCPA defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." Tex. Civ. Prac. & Rem. Code § 27.001(2). The TCPA provides that "'[c]ommunication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). Appellants assert that Streamline's claims implicate their exercise of the right of association as defined by the TCPA because Streamline's claims depend on communications made between Appellants and Molina or Appellants and Martinez as

5

they pursued their common interests in developing and maintaining a competing insurance provider.

In its petition, Streamline emphasized in its causes of action against Molina and Martinez that they had access to confidential information and specialized training as a result of their positions with Streamline and asserted that as a result of their breaches, Martinez and Molina have caused Streamline "unfair loss of its competitive advantage" and harm to its valuable goodwill. Streamline pled that Appellants knowingly participated in breach of fiduciary duty because they "schem[ed] to form a competing insurance business while Molina was still employed by [Streamline,] using Molina's position of trust to solicit [Streamline's] customers"; they "encourage[ed] or assist[ed] Molina to solicit or induce Laura Martinez to resign from [Streamline] and hire Martinez to join Coast to Coast"; and they "encourage[ed] or assist[ed] Molina to harm and interfere with [Streamline's] customer relationships and valuable goodwill." Streamline pled that Appellants tortiously interfered with Molina's and Martinez's employment contracts with Streamline by engaging in conduct that violated the contracts' "non-solicitation" and "no hiring" clauses. The petition specifically asserts that Molina contracted with at least one Streamline client to sell insurance policies issued by Coast to Coast, rather than Streamline, while Molina was employed by Streamline, and the petition urges that Appellants conspired with Molina to engage in this scheme. The petition also alleges that Appellants, working with Molina while he was bound by his contract with Streamline, continued to "lure away" Streamline's customers to their new business and that they "conspired to hire" former Streamline employee Martinez.

Appellants contend that these allegations—that they induced Martinez to leave Streamline and join Coast to Coast, that they encouraged Molina to harm and interfere with

6

Streamline's customer relationships, and that they have conspired with Molina and Martinez to lure away Streamline's customers ostensibly with the use of confidential information or specialized training acquired while Molina and Martinez worked for Streamline—are based on, related to, or in response to communications between Appellants, Martinez, and Molina as they allegedly joined together to collectively express, promote, pursue, or defend their common interests in developing business for Coast to Coast. We agree and therefore conclude that Streamline's allegations implicate Appellants' right of association as defined by the TCPA. *See Elite Auto Body, LLC. v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 205 (Tex. App.—Austin 2017, pet. dism'd) (holding that allegations of communications among defendants through which they lured competitor's employees to their business and communications through which defendants shared or used confidential information constituted exercise of right of association). Having determined that Streamline's claims are based on, in response to, or related to Appellants' right of association, we need not consider whether the claims also implicate Appellants' right of free speech.

On appeal, Streamline does not dispute the TCPA's application as an initial matter,[2] but instead urges that (1) the commercial-speech exemption applies and (2) the TCPA is preempted by the Covenants Not to Compete Act. We therefore next address these arguments for why the TCPA should not apply to this case.

***Commercial-Speech Exemption***

The commercial-speech exemption expressly provides that the TCPA "does not apply to a legal action brought against a person primarily engaged in the business of selling or

---

[2] Although Streamline does not dispute the TCPA's applicability, Appellants had the burden to show that the TCPA applies to be entitled to dismissal.

leasing goods or services," but only "if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction." Tex. Civ. Prac. & Rem. Code § 27.010(b). The Texas Supreme Court has construed the exemption to apply when:

> (1) the defendant was primarily engaged in the business of selling or leasing goods, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018). "The burden of establishing the commercial-speech exemption is on the nonmovant, the party relying on the exemption." *RigUp, Inc. v. Sierra Hamilton, LLC*, ___ S.W.3d ___, No. 03-19-00399-CV, 2020 WL 4188028, at *6 (Tex. App.—Austin July 16, 2020, no pet. h.) (citing *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 887 (Tex. App.—Austin 2018, pet. denied)). Because a claim must satisfy all four elements to fall within the commercial-speech exemption, the failure to establish any one element is sufficient to prevent the exemption from applying to a claim. *Id.* (citing *Castleman*, 546 S.W.3d at 690-91).

The exemption may be established as to some communications but not others. *Toth v. Sears Home Improvement Prods., Inc.*, 557 S.W.3d 142, 153 (Tex. App.—Houston [14th Dist.] 2018, no pet.). To determine whether the exemption applies, we examine the pleadings and record evidence in the light most favorable to Streamline. *See Grant*, 556 S.W.3d at 889 (citing Tex. Civ. Prac. & Rem. Code § 27.006; *Serafine v. Blunt*, 466 S.W.3d 352, 369 n.28

8

(Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring)).

Appellants assert that to the extent Streamline alleges that they "schemed" with Molina to form a competing business or "encouraged" Molina to usurp Streamline's customers and alleges that they tortiously interfered with Molina's and Martinez's employment contracts, the potentially actionable statements or conduct were not directed at actual or potential customers and thus do not satisfy the fourth element of the commercial-speech exemption. In arguing that the commercial-speech exemption applies, Streamline states that its claims are "straightforward," explaining that "Molina, while a fiduciary, encouraged Streamline's customers to switch to Coast to Coast" and "did so as an agent of [Appellants]." Streamline further asserts that Molina acted on behalf of Appellants and that Appellants "participated by signing up those customers Molina wrongfully diverted." Streamline continues, "[t]he wrongdoing is Coast to Coast participating in Molina's tortious conduct which is itself commercial speech." Streamline also argues that Martinez "violated her customer non-solicitation agreement by selling to and servicing insurance accounts for the Streamline customers who Molina wrongfully diverted," thereby committing wrongdoing through "commercial speech" as "Coast to Coast's agent." Streamline sums up its argument as follows:

> [T]he uncontroverted evidence shows that (1) Coast to Coast, like Streamline, was primarily engaged in the business of selling insurance products or insurance services; (2) Coast to Coast and its agents made the actionable statements or engaged in the conduct at issue in their capacity as sellers of these insurance products or services; (3) the statements or conduct at issue arose out of a commercial transaction involving the kind of products or services Coast to Coast provides (i.e., improperly soliciting Streamline's actual and potential customers to buy insurance products or services from Coast to Coast instead of Streamline); and (4) the intended audience was Coast to Coast's actual or potential customers for the kind of insurance products or services that Coast to Coast and Streamline provide.

9

Specifically, Streamline attached an affidavit to its response to the TCPA motion to support its allegation of customer diversion by Molina and Martinez. The affidavit states that Molina, while employed by Streamline, directed a prospective Streamline customer, CZ Star, LLC, to call Martinez, who then sold CZ Star an insurance policy on behalf of Coast to Coast. The affiant, who was CZ Star's owner at the time, further averred that when he spoke to Martinez, she mentioned that Molina would receive a fee for the sale of the policy, thereby demonstrating Martinez's knowledge of Molina's involvement in that transaction. Attached to the CZ Star affidavit is an insurance identification card that the affiant averred was sent to him by Molina; the card shows that the issuing company of the CZ Star policy was Coast to Coast. Streamline argues that because Martinez was a Coast to Coast employee, Coast to Coast "was aware of the wrongdoing," including Molina's involvement in the CZ Star transaction, as well as the diversion of other Streamline customers.

In response, Appellants argue that Streamline has not presented sufficient evidence that Molina was acting as an agent for Coast to Coast and that its claim against Coast to Coast "primarily concerns alleged communication between Coast to Coast and Molina, not between Coast to Coast and Streamline's customers." However, we need not determine in this case whether Molina was acting as an agent for Coast to Coast to determine whether the commercial-speech exemption applies to Streamline's claims against Coast to Coast. Instead, we need only determine whether *Coast to Coast* "made the statement or engaged in the conduct on which the claim is based" in its capacity as a seller of insurance products or services. *See Castleman*, 546 S.W.3d 684, 688 (Tex. 2018). Streamline has alleged and presented evidence that Martinez, a Coast to Coast employee, was participating in the alleged communications with Streamline customers to divert their business to Coast to Coast. Viewing the pleadings and

10

evidence in the light most favorable to Streamline, as we must, we conclude that the commercial-speech exemption applies to Streamline's claims that Coast to Coast knowingly participated in Molina's alleged breach of fiduciary duty and that Coast to Coast tortiously interfered with Molina's and Martinez's employment contracts to the extent Streamline has alleged that Molina and Coast to Coast's employee Martinez engaged in communications with actual or potential Streamline customers for the purpose of securing sales of insurance products or services by Coast to Coast. *See Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *9 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.) (concluding that commercial-speech exemption applied to claims for tortious interference with non-compete and non-solicitation provisions in employment agreement based upon defendant company's alleged communications with plaintiff company's customers). The trial court properly denied the TCPA motion to dismiss as to these claims against Coast to Coast. But to the extent Streamline's claims are based on its allegations that Molina assisted Coast to Coast with procuring office space in New Mexico, Streamline has not carried its burden to demonstrate that the commercial-speech exemption applies to those claims because those claims do not involve alleged communications with Streamline's actual or prospective customers. *See Grant*, 556 S.W.3d at 890 (concluding commercial-speech exemption did not apply where plaintiffs failed to demonstrate that intended audience of statements or conduct was actual or potential customers); *Elite Auto*, 520 S.W.3d at 206 n.75 (noting that commercial-speech exemption would not apply where intended audience of alleged statements or conduct was not actual or potential customers).

Streamline has also failed to meet its burden to show that its claims against the Laras individually satisfy the fourth element of the commercial-speech exemption. None of

11

Streamline's claims are based upon alleged communications between Lara, Jr., or Lara, Sr., and Streamline's actual or prospective customers. In connection with its claim for the Laras' knowing participation in a breach of fiduciary duty, Streamline alleges the Appellants: "schem[ed] to form a competing insurance business while Molina was still employed by [Streamline,] using Molina's position of trust to solicit [Streamline's] customers"; "encourage[ed] or assist[ed] Molina to solicit or induce Laura Martinez to resign from [Streamline] and hire Martinez to join Coast to Coast"; and "encourage[ed] or assist[ed] Molina to harm and interfere with [Streamline's] customer relationships and valuable goodwill." Similarly, in connection with its claim for tortious interference with employment contracts, Streamline alleges that Appellants "engag[ed] in conduct that violated the contracts' non-solicitation and no hiring clauses" by working with Molina while he was bound by his contract with Streamline to "lure away" Streamline's customers to their new business and by "conspir[ing] to hire" former Streamline employee Martinez. As alleged by Streamline, these statements and conduct were directed to Molina and Martinez, rather than to actual or potential customers. Accordingly, Streamline has not carried its burden to establish the fourth element of the commercial-speech exemption, and the exemption therefore does not apply to any of its claims against the Laras individually. *See Grant*, 556 S.W.3d at 890; *Elite Auto*, 520 S.W.3d at 206 n.75.

Thus, we conclude that Streamline's claims against Coast to Coast for knowing participation in a breach of fiduciary duty and for tortious interference with Molina's and Martinez's employment contracts are exempt from dismissal under the TCPA, to the extent Streamline has alleged that Molina and Coast to Coast's employee Martinez engaged in communications with actual or potential Streamline customers for the purpose of securing sales

12

of insurance products or services by Coast to Coast, but we will consider whether Streamline's claim against Coast to Coast for knowing participation in a breach of fiduciary duty based on Molina's assistance with procuring the New Mexico office space and Streamline's claims against the Laras individually should have been dismissed by the trial court.

### *Preemption by the Covenants Not to Compete Act*

Streamline asserts that the Covenants Not to Compete Act (CNCA) precludes application of the TCPA. *See* Tex. Bus. & Com. Code §§ 15.50-.52. Streamline argues that Section 15.52 of the CNCA indicates that the CNCA preempts and excludes any other procedures and remedies, including the TCPA, in an action to enforce a Texas covenant not to compete. Appellants assert that Streamline has waived that argument by not raising it before the district court in response to their TCPA motion. *See* Tex. R. App. P. 33.1 (preservation of appellate complaints).

Appellate courts do not consider issues that were not raised in the court below, though parties may construct new arguments on appeal in support of issues properly preserved. *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014). Although Streamline argued that the CNCA preempts the TCPA in responding to the TCPA motion to dismiss filed by Martinez, the record before us contains nothing to show that Streamline mentioned the CNCA with reference to the Appellants or the claims against them. To have preserved their argument that preemption by the CNCA serves as an alternative basis for denying Appellants' motion to dismiss, Streamline was required to present the argument to the district court. Because it did not, we will not consider this argument on appeal. *See Grant*, 556 S.W.3d at 890-91 (concluding that argument that CNCA preempts TCPA was waived when not first presented to trial court);

13

*Entergy Gulf States, Inc. v. Public Util. Comm'n*, 173 S.W.3d 199, 210 (Tex. App.—Austin 2005, pet. denied) (noting that preemption argument that affects choice of law can be waived (citing *Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 545 (Tex. 1991) (noting that preemption argument that affects choice of forum rather than choice of law is not waivable and can be raised for first time on appeal))).[3]

**Prima Facie Case**

Having concluded that Appellants met their burden of showing that the TCPA applies to some of Streamline's claims against them, we turn to the second step of the TCPA analysis and consider whether Streamline has established by clear and specific evidence a prima facie case for each essential element of its claims for knowing participation in a breach of fiduciary duty and tortious interference with a contract. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c). The words "clear" and "specific" in the context of the TCPA mean, for the former, "unambiguous," "sure," or "free from doubt" and, for the latter, "explicit" or "relating to a particular named thing." *Lipsky*, 460 S.W.3d at 590. A "prima facie case" "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* It is "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (internal quotation marks omitted). To determine whether this burden is met, we consider the pleadings and any supporting and opposing affidavits. Tex. Civ. Prac. & Rem. Code § 27.006(a). However, "pleadings that might suffice in a case that does not implicate the TCPA may not be sufficient to satisfy the TCPA's 'clear and specific evidence'

---

[3] *See also RigUp, Inc. v. Sierra Hamilton, LLC*, __ S.W.3d ___, No. 03-19-00399-CV, 2020 WL 4188028, at *5 (Tex. App.—Austin, July 16, 2020, no pet. h.) (holding CNCA does not preempt TCPA because "the statutes govern different stages of the proceedings").

requirement." *Lipsky*, 460 S.W.3d at 590. "[M]ere notice pleading—that is, general allegations that merely recite the elements of a cause of action—will not suffice. Instead, a plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 590-91.

### Knowing Participation in Breach of Fiduciary Duty

A claim for knowing participation in breach of fiduciary duty "arises from the rule set forth in *Kinzbach Tool Co. v. Corbett-Wallace Corp.*" *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 720-721 (Tex. App.—Austin 2001, pet. denied) (citing 160 S.W.2d 509, 514 (Tex. 1942)). "It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tort-feasor with the fiduciary and is liable as such." *Kinzbach*, 160 S.W.2d at 514. "To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Meadows v. Hartford Life Ins.*, 492 F.3d 634, 639 (5th Cir. 2007) (citing *Wootten*, 59 S.W.3d at 722).

Streamline pled that Molina served as its employee for ten years, managed its office in New Mexico, and was provided confidential company information in his role as branch manager. Appellants do not dispute that this constitutes at least the minimum quantum of evidence necessary to support a rational inference that Molina had a fiduciary duty to Streamline. However, Appellants argue that Streamline has not shown that "any of the Appellants knew Molina owed that duty during the relevant time frame or knowingly participated in [his] breach." Streamline argues on appeal that Molina breached his fiduciary duty because "he lured away and

solicited Streamline's actual or potential customers like CZ Star to purchase insurance through Coast to Coast instead of Streamline, while he was still employed by Streamline" and that Appellants knew they were participating in Molina's breach because Martinez told CZ Star that Molina would receive a fee for CZ Star's policy and because Lara, Sr., acknowledged at his deposition that Molina helped him procure the office space that Coast to Coast sublet in New Mexico from a company called Town Recycling. On rehearing, Streamline further urges that the Court should consider evidence in the record that twenty-seven customers, all of whom had worked with Molina at Streamline, moved from Streamline to Coast to Coast as circumstantial support of Appellants' knowing participation in Molina's breach.

In his affidavit, Lara, Sr., averred that he first became acquainted with Molina about ten years before as his insurance agent, when Lara, Sr., had purchased insurance from Streamline for his own trucking business and that they developed a friendship. Thus, he knew Molina worked for Streamline. As previously explained, Streamline alleges that while Molina was employed by Streamline, he directed prospective Streamline customer CZ Star to call Martinez, and as a result, CZ Star purchased a policy through Coast to Coast; CZ Star's former owner averred that Martinez told him that Molina would receive a fee as a result of the customer's insurance purchase. Streamline also alleges that Molina and Martinez diverted other Streamline customers' business to Coast to Coast. We have already determined that to the extent that Streamline asserts that this is actionable conduct or statements on the part of Coast to Coast that supports Streamline's claim for knowing participation in a breach of fiduciary duty by Coast to Coast, the claim is exempt from dismissal under the TCPA's commercial-speech exemption.

At the hearing on Appellants' TCPA motion to dismiss and in Streamline's brief in connection with its argument concerning the commercial-speech exemption, Streamline

16

asserted that Molina acted as an agent of Coast to Coast, as well as of the Laras individually, both when encouraging Streamline's customers to switch to Coast to Coast and by securing office space for Coast to Coast in New Mexico. As explained above, for the purpose of determining whether the commercial-speech exemption applies to Streamline's claims, we need not consider whether Molina acted as an agent of Coast to Coast to determine that the commercial-speech exemption applies to Streamline's claim that Coast to Coast participated in the alleged communications with Streamline customers to divert their business to Coast to Coast. As for whether Molina was acting as an agent for the Laras individually, on this record, we cannot conclude that Martinez's knowledge of the CZ Star transaction can be imputed to the Laras individually or that Molina was acting as an agent for the Laras individually. *See Community Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 691 (Tex. 2017) ("To establish the existence of an agency relationship, the evidence must demonstrate the purported agent's consent to act on the principal's behalf and subject to the principal's control, together with the purported principal's authorization for the agent to act on his behalf."). There is no clear and specific evidence in the record to support a rational inference that the Laras individually knew of Molina's and Martinez's alleged communications with Streamline's customers or that the Laras individually directed Molina to "lure[] away and solicit[] Streamline's actual or potential customers . . . while he was still employed by Streamline."

As for the circumstantial evidence that twenty-seven customers moved from Streamline to Coast to Coast, Lara, Sr., testified that Coast to Coast's employee in New Mexico, Ulises Astorga, sold those policies. When asked if Astorga knows Molina, Lara, Sr., testified, "I believe he does," but he did not know how they know each other, and when asked about whether he knew if Molina was helping Astorga sign up these accounts, he testified, "I do not know."

17

Even when considered in conjunction with the allegations related to the CZ Star transaction, the fact that multiple Streamline customers moved their business from Streamline to Coast to Coast does not raise a rational inference that the Laras individually knew of Molina's and Martinez's alleged communications with Streamline's customers or that the Laras individually directed Molina to "lure[] away and solicit[] Streamline's actual or potential customers . . . while he was still employed by Streamline." Accordingly, neither the evidence presented by Streamline related to the CZ Star transaction nor the circumstantial evidence that twenty-seven former Streamline customers became Coast to Coast customers establishes the minimum quantum of evidence necessary to support a rational inference that Lara, Sr., or Lara, Jr., knowingly participated in Molina's alleged breach.

On appeal, Streamline further asserts that Molina breached his fiduciary duty to it by helping Appellants procure office space in New Mexico and that Lara, Sr., knowingly participated in this alleged breach. Appellants argue that Molina made these arrangements as a favor to his friend, Lara, Sr., because the Laras lived in Texas, while Molina lived in New Mexico. At his deposition, Lara, Sr., testified that he "got help from Mr. Molina because he's a friend of mine. And he knew the people [at Town Recycling] and said it was going to be cheap, so he helped me out." According to both Lara, Sr.'s testimony and the affidavit from the owner of Town Recycling, there was no written lease; Coast to Coast rented the space on a month-to-month basis for $400 per month, which was paid by check sent from Coast to Coast. Lara, Sr., testified that the space was not utilized that much "because after we got it Astorga [a Coast to Coast employee] didn't stay with us. But I just didn't have any way to deal with the computer that was there." He testified that Astorga was the only employee who worked in the New Mexico office space.

18

The affidavit from Town Recycling's owner states that "Molina leased office space on behalf of Coast to Coast Insurance Services LLC from 10/11/2018 to 1/10/2019." According to Streamline's petition, Molina left his employment with Streamline on September 10, 2018. Streamline has not argued that Molina continued to owe it a fiduciary duty after he was no longer employed, and as discussed below, there is no clear and specific evidence in the record to support Streamline's theory that the Laras individually knew of Molina's employment agreement with Streamline before Streamline sued Appellants. Moreover, Streamline did not allege in its petition or explain in its TCPA response or appellate briefing how the act of assisting with procuring office space in New Mexico after his employment with Streamline had ended constituted a breach of Molina's fiduciary duty to Streamline. The record does not show that assisting Coast to Coast with leasing the New Mexico office was related to Molina's luring away of customers from Streamline. Streamline has not alleged that Molina solicited Streamline's clients for Coast to Coast in the New Mexico office. The New Mexico office space itself appears to have no relationship to Streamline's customers choosing to move their business to Coast to Coast. But even if we assume without deciding that Molina's conduct in assisting Coast to Coast obtain office space was a breach of his fiduciary duty to Streamline, on these facts, there is no clear and specific evidence in the record supporting a rational inference that the Laras individually (or through them, Coast to Coast) knew that Molina was breaching a fiduciary duty by assisting them with obtaining office space in New Mexico after he was no longer employed by Streamline.[4] Accordingly, Streamline has not met its burden to establish by clear and specific

---

[4] Although the notarized letter attached to the Town Recycling owner's affidavit states that "Molina leased an office space at Town Recycling on behalf of Martin Lara Jr[.] for their business, Coast to Coast Insurance," there is no evidence in the record to support that Lara, Jr.,

19

evidence a prima facie case that (1) Coast to Coast knowingly participated in Molina's alleged breach of fiduciary duty by assisting with procuring office space or (2) the Laras knowingly participated in any of Molina's alleged breaches.

### Tortious Interference with a Contract

To establish a tortious-interference claim, Streamline must show by clear and specific evidence that (1) a contract existed between Molina and Streamline and between Martinez and Streamline; (2) Appellants willfully and intentionally interfered with the contracts; (3) the interference proximately caused Streamline damage; and (4) Streamline suffered actual damage or loss. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002) (describing elements of claim for tortious interference with contract). "To establish a willful and intentional act of interference, there must be evidence that the defendant was more than a willing participant—the defendant must have knowingly induced one of the contracting parties to breach its obligations under a contract." *Ferrara v. Nutt*, 555 S.W.3d 227, 243 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (quoting *Greenville Automatic Gas Co. v. Automatic Propane Gas & Supply, LLC*, 465 S.W.3d 778, 786-87 (Tex. App.—Dallas 2015, no pet.)).

Streamline attached copies of its contracts with Martinez and Molina to its response to the motion to dismiss. The contracts suffice to show by clear and specific evidence that a contract existed between Streamline and each of its former employees. Both contracts contained non-solicitation clauses precluding Streamline employees from "directly or indirectly" "seek[ing] to acquire any interest in any Active Prospective Client of [Streamline]" for two years from the date when they were no longer employed by Streamline or its successors.

---

knew that Molina was involved in assisting with leasing the space or anything else about the circumstances of how the office space was obtained.

20

Appellants challenge the second element of Streamline's claim, i.e., that they willfully and intentionally interfered with Martinez's and Molina's contracts, asserting that Streamline failed to show by clear and specific evidence that Appellants knew about the existence or the terms of those contracts during the relevant time frame or that they knowingly induced Martinez or Molina to breach those contracts. We have already determined that to the extent that Streamline asserts that Martinez's and Molina's alleged solicitation of Streamline customers is actionable conduct or statements on the part of Coast to Coast that supports Streamline's claim for tortious interference by Coast to Coast, the claim is exempt from dismissal under the TCPA's commercial-speech exemption.

As for the Laras individually, Streamline did not provide clear and specific evidence to support its theory that the Laras were aware of the contracts between Streamline and its employees during the relevant time period. Streamline has not presented any evidence that the Laras were aware of the contracts before Streamline filed suit. Thus, Streamline did not establish by clear and specific evidence a prima facie case for each essential element of its claim for tortious interference with a contract against the Laras.

**Valid Defense**

Appellants argue that they were entitled to dismissal of Streamline's claims for tortious interference with a contract because they proved each essential element of the defense of justification by a preponderance of the evidence. *See* Tex. Civ. Prac. & Rem. Code § 27.005(d). Because we have concluded that Streamline has not established its prima facie case for its tortious-interference claim against the Laras or Coast to Coast (to the extent that the tortious-

21

interference claim against Coast to Coast is not based on conduct that falls into the TCPA's commercial-speech exemption), we need not consider this affirmative defense.

## CONCLUSION

Based on our holdings above, we reverse in part the district court's order denying Appellants' TCPA motion to dismiss and render judgment dismissing Streamline's claims against the Laras for knowing participation in a breach of fiduciary duty and tortious interference with a contract. We also reverse in part the district court's order denying Appellants' TCPA motion to dismiss and render judgment dismissing Streamline's claim against Coast to Coast for knowing participation in a breach of fiduciary duty, to the extent that claim is based on Molina's assistance with procuring the New Mexico office space. We affirm the district court's denial of the motion to dismiss the remainder of Streamline's claims against Coast to Coast for knowing participation in a breach of fiduciary duty and tortious interference with a contract. We remand the case to the trial court for further proceedings consistent with this opinion.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed in Part, Reversed and Rendered in Part, Remanded

Filed: December 31, 2020

22