TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING








NO. 03-00-00213-CV







Cox Texas Newspapers, L.P. d/b/a Austin American-Statesman, Appellant


v.


Edward Wootten, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT

NO. 99-07920, HONORABLE PAUL DAVIS, JUDGE PRESIDING






 On consideration of appellant's motion for rehearing, we withdraw our opinion and
judgment rendered on January 11, 2001, and substitute the following opinion.

 Edward Wootten brought suit against Cox Texas Newspapers, L.P., doing business
as the Austin American-Statesman (the Statesman) for damages arising out of an article published
by the Statesman that allegedly included photographs of his deceased wife. The Statesman moved
for summary judgment, in part on free-speech grounds, and the trial court denied the motion. The
Statesman now brings this interlocutory appeal from the denial of its motion for summary judgment. 
See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(6) (West Supp. 2001). We reverse the trial
court's denial of the Statesman's motion for summary judgment.


FACTUAL AND PROCEDURAL BACKGROUND


 Wootten's wife, Barbara, died in November of 1998. He engaged the services of
Robert Falcon, owner of All Faith's Funeral Service, to prepare his wife's body for burial and for
transfer from Austin to Arlington National Cemetery in Virginia for a military funeral. Wootten
instructed Falcon that his wife wished to be buried in her own white gown with a crucifix on her
chest and her hands folded over her prayer book. Wootten also told Falcon not to apply any makeup
to her face and not to open the casket for anyone, as his wife did not want her body to be viewed. 
Falcon was to drape the closed casket in an American flag and have it flown to Virginia for burial. 
Barbara Wootten's casket was shipped to Virginia two days after her death, and she was
subsequently buried at Arlington National Cemetery.

 On Sunday, March 14, 1999, the Statesman published an article entitled "Robert
Falcon and the Cheap Way Out." The article was sparked by one reporter's curiosity about the
practices and prices of the modern funeral business. That reporter approached Falcon in hopes of
learning how and why Falcon offers funeral services at substantially lower prices than his
competitors. Falcon agreed to allow the reporter and his photographer access to every aspect of the
funeral home. The article that ultimately appeared in the newspaper described the many unique
features of Falcon's funeral business and detailed the reporter's experience following Falcon on
death calls and watching him prepare bodies and conduct funerals over the course of more than 200
hours during the fall and winter of 1998. The front-page article included a picture of a casket draped
with an American flag on an air-freight pallet. On another page of the article, there was a small
picture of an open casket with a woman lying inside dressed in a white gown with a crucifix on her
chest and her hands folded over a prayer book. Her face was not shown.

 Wootten was reading his Sunday newspaper when he noticed the front-page article
about Falcon. As he read on, he discovered that the reporter and photographer had been following
Falcon during the time that his wife's body had been in Falcon's care. He then recognized his wife
as the person lying in the open casket. The article included this disclaimer: "Families who did not
wish themselves or their deceased to be named or pictured in this story aren't; others volunteered
to share their experiences. In a few cases, identifiable details were omitted." Wootten had never
been informed that an article was being published, was never asked for permission to publish the
image of his wife, and insists that he would have refused any such request. Wootten felt the use of
his deceased wife's photograph in an article entitled "The Cheap Way Out" sullied the dignity and
solemnity he had hoped to provide her and violated her wish not to be viewed after her death.

 Wootten subsequently filed suit against the Statesman, Falcon, and the funeral home. 
The Statesman moved for summary judgment claiming that Wootten could not succeed on any of
the causes of action that he pleaded, that Wootten actually pled nothing more than invasion of
privacy, and that the Statesman's actions were privileged under the First Amendment and article 1,
section 8 of the Texas Constitution. See U.S. Const. amend. I; Tex. Const. art. 1, § 8. The trial court
denied the Statesman's motion without stating any grounds, and the Statesman now appeals the
interlocutory order of the trial court. Falcon and the funeral home are not parties to this appeal.

DISCUSSION


 In general, the denial of a motion for summary judgment is an interlocutory order not
reviewable on appeal. Novak v. Stevens, 596 S.W.2d 848, 849 (Tex. 1980); Delta Air Lines, Inc. v.
Norris, 949 S.W.2d 422, 428 (Tex. App.--Waco 1997, writ denied). However, section 51.014(a)(6)
of the Texas Civil Practice and Remedies Code gives members of the electronic and print media, and
those whose statements have been published in the media, the right to appeal from a denial of a
motion for summary judgment that is based in whole or in part on a free-speech or free-press claim
or defense. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(6); see Delta Air Lines, 949 S.W.2d at
428. Moreover, in the interest of judicial economy, we may consider on appeal any claim raised in
the media defendant's motion and denied by the trial court, so long as the motion was based at least
in part on free-speech grounds. Delta Air Lines, 949 S.W.2d at 429. Because the Statesman asserts
in part that its actions are protected as conduct of a free press, the trial court's denial of the
Statesman's motion for summary judgment is reviewable in its entirety. We review the trial court's
summary-judgment decision de novo. See Texas Dep't of Ins. v. American Home Assurance Co.,
998 S.W.2d 344, 347 (Tex. App.--Austin 1999, no pet.). 

 Summary judgment is proper if the movant establishes that there are no genuine
issues of material fact and that it is entitled to judgment as a matter of law. Wornick Co. v. Casas,
856 S.W.2d 732, 733 (Tex. 1993). A defendant who conclusively negates at least one of the
essential elements of each of the plaintiff's causes of action is therefore entitled to summary
judgment. Id. In reviewing a summary judgment, we must accept all evidence favorable to the non-movant as true, indulging every reasonable inference and resolving all doubts in favor of the non-movant. Id. 



 Joint Tortfeasor Liability
 
 Breach of Fiduciary Duty
 


 Wootten contends that Falcon had a fiduciary duty to preserve the dignity of his
wife's dead body, which was breached when he allowed the Statesman access to the corpse. 
Wootten claims that the Statesman knew that Falcon was breaching this duty and that the Statesman
participated in the breach by failing to get Wootten's permission to take and publish photographs of
his wife. Wootten's first cause of action asserts that the Statesman should be held liable as a joint
tortfeasor because the Statesman knowingly participated in the alleged breach of Falcon's fiduciary
duty to Wootten. This claim arises from the rule set forth in Kinzbach Tool Co. v. Corbett-Wallace
Corp., 160 S.W.2d 509, 514 (Tex. 1942). 

 The Kinzbach case involved a suit for damages between two historically fierce
competitors in the oil field tool business, Corbett-Wallace Corporation and Kinzbach Tool Company. 
Id. at 510. The dispute involved Kinzbach's negotiated purchase of Corbett's sales-right contract
on a patented tool. Because Corbett and Kinzbach were on unfriendly terms, Corbett contacted G.E.
Turner, one of Kinzbach's employees, to broker the sale. Corbett told Turner that he would agree
to sell the contract for no less than $20,000 and would pay Turner a commission out of the sale price
if the sale was completed. Turner then approached Kinzbach about purchasing the contract but never
disclosed that Corbett was willing to take as little as $20,000, or that Turner himself was expecting
a commission from the sale. In the end, Kinzbach agreed to pay $25,000 for the contract, and
Corbett promised Turner a commission of $5000. When Kinzbach found out about the inside deal,
he sued both Turner and Corbett to have the $5000 commission credited toward the price of the
contract. 

 The supreme court found as a matter of law that Turner abused his fiduciary
relationship with his employer, Kinzbach, by failing to fully disclose the nature of his dealings with
Corbett. Id. at 513-14. The court then went on to find Corbett liable as a joint tortfeasor.


It is settled as the law of this State that where a third party knowingly participates in
the breach of duty of a fiduciary, such third party becomes a joint tort-feasor with the
fiduciary and is liable as such. It follows that when Corbett employed Turner, who
it knew was Kinzbach's fiduciary, under the circumstances and conditions we have
already detailed, it became a party to the breach of duty committed by Turner, and
therefore became a joint tort-feasor with Turner with regard to the rights of
Kinzbach.



Id. at 514 (citations omitted).

 In the instant case, Wootten's allegations parallel the elements of the Kinzbach rule. 
He first asserts that he and Falcon had a fiduciary relationship. Wootten also alleges that the
Statesman knew of Falcon's fiduciary duty to Wootten to preserve the dignity of his wife's body (1)
and was aware that it was participating in Falcon's breach of that duty. Wootten did not allege that
the Statesman owed him a fiduciary duty independent of Falcon's duty to preserve the dignity of his
wife's corpse.

 The duties stemming from the relationship between Wootten and Falcon are two-fold:
first, Falcon had a general duty to preserve the dignity of Barbara Wootten's body as any funeral
director has to preserve the dignity of any body entrusted to him; second, Falcon had a special duty
to Wootten not to allow Barbara Wootten's body to be viewed. This special duty was unique
between Wootten and Falcon and there is no evidence that the Statesman knew or had reason to
know of the special duty. A cause of action premised on contribution to a breach of a fiduciary duty
under Kinzbach must involve the knowing participation in such a breach. See id. In this case,
Wootten has presented no evidence that the Statesman knew about the contractual duty to prevent
Barbara Wootten's body from being viewed. Because Wootten has failed to assert that element of
the claim, no cause of action exists against the Statesman under Kinzbach for the breach of the
special duty. See id.

 The next question is whether the Statesman's publication of the photos of Barbara
Wootten's casket and body breached Falcon's general duty to Wootten to preserve the dignity of his
wife's body. Photographs of deceased persons are not undignified per se, and generally cannot be
said to violate the deceased's dignity by mere publication. In this case, there was nothing about the
photographs of Barbara Wootten's body and casket that a reasonable finder of fact could find
undignified. The image of a closed coffin draped with an American flag suggests to most viewers
that the deceased is worthy of honor and respect. Nothing about this photograph offends the dignity
of Wootten's wife, who is not identified. Likewise, the photograph of a deceased woman in repose
in a coffin, wearing a long white dress and a crucifix, with her face concealed and her hands
solemnly enfolding a prayer book, is an image that accords both solemnity and dignity to the subject. 
No name or identifying characteristics are revealed. As a matter of law, the publication of these two
photographs does not violate the general duty that Falcon owed to maintain Barbara Wootten's
dignity, and thus no cause of action will lie against the Statesman as a joint tortfeasor under the
Kinzbach theory. (2) See id.



 
 Breach of Contract and Tortious Interference with Contract
 


 Wootten also contends that under Kinzbach, the Statesman is liable for Falcon's
breach of contract. Wootten states that "the Statesman is liable as a joint tortfeasor with Falcon for
breaching the duty 'to protect the dignity of the deceased and the deceased's family' and for violating
the 'specific instructions given to Falcon that there was to be no viewing of Mrs. Wootten's body.'" 
We hold that Wootten cannot recover contract damages from the Statesman.

 The Statesman was not a party to the contract between Wootten and Falcon. As a
general rule, contract damages may not be obtained from a person who was not a party to the
contract. Bernard Johnson, Inc. v. Continental Constructors, Inc., 630 S.W.2d 365, 369 (Tex.
App.--Austin 1982, writ ref'd n.r.e.). Alternatively, however, damages may be sought from a third
party for tortious interference with a contract. In order to succeed on such a claim, however, the
plaintiff must show, among other things, that the third party intentionally interfered with the contract. 
See Juliette Fowler Homes, Inc. v. Welch Assocs., Inc., 793 S.W.2d 660, 664 (Tex. 1990). Because
Wootten does not maintain that the Statesman knew of his specific instructions to Falcon, Wootten
cannot successfully allege intentional interference with that agreement. Further, we find no authority
for the proposition that Kinzbach allows for recovery for any breach of contract. We sustain the
Statesman's fourth point of error to the extent that Wootten is seeking contract damages from the
Statesman for Falcon's breach of promise to Wootten.


II. Emotional Distress

 In its sixth point of error, the Statesman asserts that the trial court erred in failing to
grant summary judgment on Wootten's claim for intentional infliction of emotional distress. 
Wootten's pleadings do not make any explicit claim for intentional infliction of emotional distress,
and he does not seem to support any such cause of action on appeal. Wootten does, however,
maintain that he is entitled to damages for the Statesman's negligent infliction of emotional distress,
and the Statesman has attacked this claim as well. Wootten has not set forth facts sufficient to
support either of these causes of action.


 A. Negligent Infliction

 Texas does not generally recognize a cause of action for negligent infliction of
emotional distress. Boyles v. Kerr, 855 S.W.2d 593, 597 (Tex. 1993). A claimant may recover
damages for mental anguish only in connection with the defendant's breach of some other legal duty. 
Id. There must be some specific duty of care that arises from the relationship between the parties. 
Id. at 600. An exception to this rule is allowed for a bystander who witnesses a serious or fatal
accident. Id. at 597-98. In this case, there is no special relationship between Wootten and the
Statesman, and Wootten does not claim to be a bystander. Thus, Wootten cannot recover damages
from the Statesman for mental anguish under a negligent infliction cause of action. See id. at 600. 


 B. Intentional Infliction

 Wootten does not specifically allege that he is entitled to intentional infliction
damages, but his pleadings do contain a description of the Statesman's actions as outrageous conduct
that should not be tolerated. Because this issue was raised in the trial court, in the interest of judicial
economy we will address the Statesman's concerns about this possible cause of action. 

 Intentional infliction of emotional distress arises when (1) the defendant acts
intentionally or recklessly, (2) the defendant's conduct is extreme and outrageous, (3) the defendant's
actions cause the plaintiff emotional distress, and (4) that emotional distress is severe. Twyman v.
Twyman, 855 S.W.2d 619, 621 (Tex. 1993). Intentional infliction does not include mere insults,
indignities, threats, annoyances, or other trivialities. Soto v. El Paso Natural Gas Co., 942 S.W.2d
671, 681 (Tex. App.--El Paso 1997, writ denied). Whether conduct is extreme and outrageous
enough to qualify for the tort of intentional infliction is a question of law. Natividad v. Alexsis, Inc.,
875 S.W.2d 695, 699 (Tex. 1994).

 Wootten has failed to state a cause of action against the Statesman for intentional
infliction of emotional distress. He contends that the damages he sustained were the direct and
proximate result of the Statesman's negligent actions. Negligent conduct is neither intentional nor
reckless. Such allegations cannot support a cause of action for intentional infliction.

 Even if we construe the plaintiff's pleadings liberally so as to include intentional
conduct, Wootten's allegations still fail as a matter of law because the Statesman's conduct cannot
be said to be so outrageous as to be totally intolerable in a civilized society. See Twyman, 855
S.W.2d at 621. Taking pictures of a dead body is not intolerable; in fact, such pictures are frequently
taken in a variety of situations. Publication of the rather dignified, albeit unauthorized, pictures of
Barbara Wootten's body was not extreme and outrageous conduct by the Statesman. (3)


It has not been enough that the defendant has acted with an intent that is tortious or
even criminal, or that he has intended to inflict emotional distress, or even that his
conduct . . . would entitle the plaintiff to punitive damages for another tort. The
conduct must be "so outrageous in character, and so extreme in degree, as to go
beyond all possible bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community."



Brewerton v. Dalrymple, 997 S.W.2d 212, 215-16 (Tex. 1999) (citations omitted). We sustain the
Statesman's sixth point of error.


III. Common-Law Negligence

 Wootten asserts, outside of the pleadings, an independent cause of action against the
Statesman for common-law negligence. Wootten's petition only alleges the Statesman's negligence
in terms of its liability as a joint tortfeasor under Kinzbach. The pleadings state that the
"Statesman's participation as a joint-tortfeasor in breaching the contract was the result of the
Statesman's negligence" and describe the Statesman's "negligence in breaching the fiduciary duty
owed to plaintiff." From the record, then, it is evident that Wootten did not raise an independent
negligence claim in his pleadings despite Wootten's attempts in his response to the Statesman's
motion for summary judgment and briefs to recast his pleadings as asserting a separate negligence
cause of action. Further, when asked at oral argument to clarify the causes of action he was alleging,
Wootten answered that his claims against the Statesman were limited to joint-tortfeasor liability and
negligent infliction of emotional distress. Wootten did not amend his pleadings to reflect any
additional negligence cause of action. The trial court could not have reached an independent
negligence claim against the Statesman that was not before it. See Grant v. Southwestern Elec.
Power Co., 20 S.W.3d 764, 776 (Tex. App.--Texarkana 2000, pet. granted). We, likewise, may not
address this issue. See Tex. R. Civ. P. 166a(c); Tex. R. App. P. 33.1(a)(1)(A). The Statesman's fifth
point of error is overruled.


IV. Invasion of Privacy

 In point of error two, the Statesman contends that the trial court erred in failing to
grant its motion for summary judgment on all claims because Wootten essentially alleged invasion
of privacy causes of action that fail as a matter of law. The Statesman insists that Wootten, "having
no viable claim for invasion of privacy, recharacterized his claims . . . under the theories of
negligence, breach of contract, tortious interference with contract, and breach of fiduciary duty." The
Statesman explains that Wootten cannot prevail on an invasion of privacy claim for the publication
of information about the dead because the right of privacy terminates upon the death of the person
whose privacy is invaded. See Moore v. Charles B. Pierce Film Enters., Inc., 589 S.W.2d 489, 491
(Tex. Civ. App.--Texarkana 1979, writ ref'd n.r.e.). The Statesman also maintains that Wootten
failed to satisfy the elements of an invasion of privacy claim that the Statesman violated Wootten's
own privacy. See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473-74 (Tex. 1995).

 The Statesman asserts that Wootten is using artful pleading to circumvent the law of
invasion of privacy to avoid the constitutional restraints imposed on those claims. See, e.g.,
Brueggemeyer v. Associated Press, 609 F.2d 825, 826 (5th Cir. 1980) (holding that accurate
reporting of newsworthy events does not fall within the tort of invasion of privacy); cf. KTRK
Television, Inc. v. Fowkes, 981 S.W.2d 779, 790-91 (Tex. App.--Houston [1st Dist.] 1998, pet.
denied) ("When a nonlibel claim is based on the same speech giving rise to a libel claim, a plaintiff
must prove the falsity of the alleged libelous speech. To hold otherwise would permit litigants to
circumvent constitutional defenses against the tort of libel by pleading torts that do not require falsity
or actual malice." (citations omitted)), overruled on other grounds by Turner v. KTRK Television,
Inc., 38 S.W.3d 103, 116 (Tex. 2000). The issue, however, is not whether Wootten has artfully
pleaded a cause of action for invasion of privacy. See Bernard Johnson, 630 S.W.2d at 367. Rather,
the issue is whether Wootten's allegations, when taken as true, invoke a rule of substantive law that
will afford him relief based on the wrong he attributes to the Statesman. See id. Because we have
held that Wootten's allegations state no viable cause of action against the Statesman, we need not
address the Statesman's second point of error.


CONCLUSION


 We hold that Wootten does not have any viable cause of action against the Statesman
for participation in Falcon's alleged breach of fiduciary duty, intentional infliction of emotional
distress, negligent infliction of emotional distress, or breach of contract, and we hold that the
Statesman is entitled to summary judgment on these claims. Because Wootten did not properly plead
a common-law negligence claim or amend his pleadings when he had the opportunity, we hold that
the trial court correctly refused to address summary judgment on a claim not before it. We therefore
reverse the trial court's order denying the Statesman's motion for summary judgment and render
judgment that as to the Statesman, Wootten take nothing.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Reversed and Rendered

Filed: July 26, 2001

Publish

1. The Statesman's photographer acknowledged in his deposition that one of Falcon's obligations
is to preserve the dignity of the corpses in his care.
2. Because of this holding, we leave for another day the Statesman's argument that recognition
of a Kinzbach cause of action against a member of the press as a joint tortfeasor for breach of a third
party's fiduciary duty while engaged in newsgathering or reporting activities, under any
circumstances, would impose too onerous a burden on freedom of the press. 
3. We do not consider whether the Constitution would protect a publication that was extreme and
outrageous.


nt its motion for summary judgment on all claims because Wootten essentially alleged invasion
of privacy causes of action that fail as a matter of law. The Statesman insists that Wootten, "having
no viable claim for invasion of privacy, recharacterized his claims . . . under the theories of
negligence, breach of contract, tortious interference with contract, and breach of fiduciary duty." The
Statesman explains that Wootten cannot prevail on an invasion of privacy claim for the publication
of information about the dead because the right of privacy terminates upon the death of the person
whose privacy is invaded. See Moore v. Charles B. Pierce Film Enters., Inc., 589 S.W.2d 489, 491
(Tex. Civ. App.--Texarkana 1979, writ ref'd n.r.e.). The Statesman also maintains that Wootten
failed to satisfy the elements of an invasion of privacy claim that the Statesman violated Wootten's
own privacy. See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473-74 (Tex. 1995).

 The Statesman asserts that Wootten is using artful pleading to circumvent the law of
invasion of privacy to avoid the constitutional restraints imposed on those claims. See, e.g.,
Brueggemeyer v. Associated Press, 609 F.2d 825, 826 (5th Cir. 1980) (holding that accurate
reporting of newsworthy events does not fall within the tort of invasion of privacy); cf. KTRK
Television, Inc. v. Fowkes, 981 S.W.2d 779, 790-91 (Tex. App.--Houston [1st Dist.] 1998, pet.
denied) ("When a nonlibel claim is based on the same speech giving rise to a libel claim, a plaintiff
must prove the falsity of the alleged libelous speech. To hold otherwise would permit litigants to
circumvent constitutional defenses against the tort of libel by pleading torts that do not require falsity
or actual malice." (citations omitted)), overruled on other grounds by Turner v. KTRK Television,
Inc., 38 S.W.3d 103, 116 (Tex. 2000). The issue, however, is not whether Wootten has artfully
pleaded a cause of action for invasion of privacy. See Bernard Johnson, 630 S.W.2d at 367. Rather,
the issue is whether Wootten's allegations, when taken as true, invoke a rule of substantive law that
will afford him relief based on the wrong he attributes to the Statesman. See id. Because we have
held that Wootten's allegations state no viable cause of action against the Statesman, we need not
address the Statesman's second point of error.


CONCLUSION


 We hold that Wootten does not have any viable cause of action against the Statesman
for participation in Falcon's alleged breach of fiduciary duty, intentional infliction of emotional
distress, negligent infliction of emotional distress, or breach of contract, and we hold that the
Statesman is entitled to summary judgment on these claims. Because Wootten did not properly plead
a common-law negligence claim or amend his pleadings when he had the opportunity, we hold that
the trial court correctly refused to address summary judgment on a claim not before it. We therefore
reverse the trial court's order denying the Statesman's motion for summary judgment and render
judgment that as to the Statesman, Wootten take nothing.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Reversed and Rendered

Filed: July 26, 2001