**AFFIRM; Opinion Filed February 7, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00238-CV**

**MICHAEL J. O'DONNELL, Appellant**
**V.**
**ROO INVESTMENT FUND II, LLC, BRENT BRUNNEMER, AND**
**MITCHELL ALLEN GREG, M.D., Appellees**

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-17362**

## MEMORANDUM OPINION

Before Justices Nowell, Miskel, and Kennedy
Opinion by Justice Kennedy

Michael J. O'Donnell appeals the trial court's orders granting summary judgment in favor of appellees RooInvestment Fund II, LLC ("RooInvestment"), Brent Brunnemer, and Mitchell Allen Gregg, M.D. (collectively, appellees) on their claims against him for breach of fiduciary duty and violations of the Texas Securities Act ("TSA") and denying his motion for new trial. In his first four issues, O'Donnell urges appellees did not conclusively establish certain elements of their claims granted in the trial court's grant of summary judgment. In his fifth issue, O'Donnell urges the trial court erred by denying his motion for new trial, in which he requested

the trial court vacate its order deeming admissions or, in the alternative, allow him to withdraw the admissions that the court deemed against him as a discovery sanction. We affirm. Because all dispositive issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.2(a), 47.4.

## BACKGROUND

O'Donnell is the managing member and president of Pepperwood Fund II GP, LLC ("Pepperwood II GP"). As manager of Pepperwood II GP he signed the limited partnership agreement that created Pepperwood Fund II, LP ("Pepperwood II"), which was formed as a vehicle to raise cash from investors for a controlling interest in Behavioral Recognition Systems, Inc. ("BRS") through the purchase of Ray and Debi Davis's BRS stock. That agreement named Pepperwood II GP as general partner of Pepperwood II.

O'Donnell solicited investments in Pepperwood II from appellees and represented to them that their investments would be used so that Pepperwood II could purchase the controlling preferred and common stock in BRS from the Davises and then cause BRS to issue Series A stock to Pepperwood II's investors. Based on these representations, appellees signed agreements, making each of them a limited partner of Pepperwood II in exchange for capital contributions from the individuals and a loan from RooInvestment.

On November 20, 2020, appellees filed suit against O'Donnell, Pepperwood II, and others who are not parties to this appeal ("defendants"). In their first amended

petition, appellees claimed O'Donnell and Pepperwood II had violated the TSA by selling securities to appellees while omitting and misrepresenting material facts surrounding their investments in Pepperwood II. In particular, appellees claimed that the defendants represented the investment funds would be used to purchase the Davises' stock without disclosing that O'Donnell had already purchased the Davises' stock and that they failed to disclose the existence of a referral agreement under which O'Donnell received payment for soliciting appellees' investments.

In that petition, appellees also sought to hold O'Donnell liable for common law fraud, fraudulent inducement, breach of fiduciary duty, and violations of section 27.01 of the Texas Business and Commerce Code. *See* TEX. BUS. & COM. CODE § 27.01 (fraud in real estate and stock transactions). Appellees' petition included assertions that after they became limited partners in Pepperwood II, and without informing them until afterwards, O'Donnell executed a document on behalf of BRS to transfer all of its intellectual property assets to Pepperwood II, then executed a second document to transfer those same assets from Pepperwood II to Omni AI, Inc. ("Omni"), an entity controlled by O'Donnell. Through Pepperwood II's general partner Pepperwood II GP, O'Donnell offered appellees the options to either exchange their limited partnership interests in Pepperwood II for shares in Omni or to withdraw from Pepperwood II and receive their capital contribution with ten percent interest. RooInvestment and Brunnemer opted not to sign either an exchange or a withdrawal agreement. Gregg signed both (half of his interest to be exchanged

–3–

for Omni shares and remaining to be withdrawn in exchange for return of capital plus interest). Gregg received no payment despite his demands for same from O'Donnell.

During the course of litigation, appellees filed a motion to compel against O'Donnell, alleging, among other things, he failed to adequately respond to requests for admission. Attached as an exhibit to that motion was O'Donnell's answers to requests for admission. The trial court conducted a hearing at which O'Donnell, representing himself, stated he was in the process of obtaining new counsel. Appellees' counsel pointed out that O'Donnell had answered several requests "by saying he did not have enough information to do so" even where the requests asked him to admit whether an attachment was a true copy of a document he had signed. At the conclusion of the hearing, the trial court signed an order granting the motion to compel, ordering O'Donnell file responses to discovery within seven days of the order and that thirty-six of appellees' requests for admissions be deemed admitted against O'Donnell.

Subsequently, appellees moved for summary judgment on their claims against O'Donnell for violations of the TSA and breach of fiduciary duty. After conducting a hearing on the motion, the trial court signed an order granting partial summary judgment against O'Donnell on appellees' claims of violations of the TSA and breach of fiduciary duty and awarding damages to each appellee. Appellees also sought and obtained partial judgment on their claims of violations of the TSA against

–4–

Pepperwood II, and Gregg sought and obtained partial summary judgment on his claim for breach of contract against Pepperwood II. Appellees later nonsuited their remaining claims against O'Donnell, specifically, fraud, fraudulent inducement, and violations of section 27.01 of the Texas Business and Commerce Code. *See* TEX. BUS. & COM. CODE § 27.01.[1]

Appellees filed a motion for entry of final judgment, seeking judgment against O'Donnell and Pepperwood II in accordance with the partial summary judgment orders previously entered. On December 13, 2022, the trial court signed a final judgment in favor of appellees on their claims for violations of the TSA against O'Donnell and Pepperwood II and breach of fiduciary duty against O'Donnell, as well as Gregg's claim for breach of contract against Pepperwood II. The final judgment also awarded pre- and post-judgment interest to appellees.

O'Donnell filed a motion for new trial and an amended motion for new trial, in which he challenged the evidence supporting findings he personally violated the TSA as a "seller" or "control person" and that he owed fiduciary duty to appellees at the time the claimed misrepresentations were made. As part of the amended motion for new trial, O'Donnell argued that the deemed admissions should be struck and he be allowed to amend his answers to appellees' requests for admissions.[2] The

---

[1] Appellees also non-suited or otherwise dismissed their claims against the remaining defendants who are not parties to this appeal.

[2] Additionally, O'Donnell argued applicable statutes of limitations barred appellees' claims against him and adopted another defendant's motion for summary judgment and all arguments therein that would

trial court denied O'Donnell's motion. O'Donnell timely filed his notice of appeal, noting he was "the only party filing this Notice of Appeal." No other party filed a notice of appeal.

## DISCUSSION

O'Donnell raises five issues, in the first four of which he urges appellees did not conclusively establish certain elements of their claims granted in the trial court's grant of summary judgment. In his fifth issue, O'Donnell urges the trial court erred by denying his motion for new trial, in which he requested the trial court vacate its order deeming admissions or, in the alternative, allow him to withdraw the admissions that the court deemed against him as a discovery sanction. As noted by O'Donnell, appellees' motion for summary judgment relied on deemed admissions in addition to other evidence as support for their motion. Accordingly, we will begin our analysis by addressing his fifth issue, in which he argues the trial court abused its discretion in deeming admissions as a discovery sanction against O'Donnell and refusing to allow him to withdraw same.

I. **_Trial Court Did Not Abuse Its Discretion in Deeming Admissions as a Discovery Sanction against O'Donnell or in Refusing to Allow Him to Withdraw Those Deemed Admissions_**

We review a trial court's denial of a motion for new trial under an abuse of discretion standard. _Asymblix LLC v. Richardson Indep. Sch. Dist._, No. 05-18-

---

support his motion for new trial but not any that might be adverse to his interest. Because O'Donnell does not raise any of these arguments on appeal, we need not discuss them further. _See_ TEX. R. APP. P. 47.1, 47.4.

00433-CV, 2018 WL 3238013, at *8 (Tex. App.—Dallas July 3, 2018, no pet.) (mem. op.) (citing *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010)). Similarly, we review a sanctions award and a trial court's denial of a motion to withdraw deemed admissions for an abuse of discretion. *See Medina v. Zuniga*, 593 S.W.3d 238, 244 (Tex. 2019); *Empowerment Homes, LLC v. Aleman*, No. 05-22-01082-CV, 2023 WL 6547898, at *3 (Tex. App.—Dallas Oct. 9, 2023, no pet.) (mem. op.) (citing *Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex. 2005) (per curiam)). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *See Asymblix*, 2018 WL 3238013, at *8 (citing *Celestine v. Dep't of Fam. & Protective Servs.*, 321 S.W.3d 222, 235 (Tex. 2010)).

Once an action is filed, a party may serve written requests for admissions that encompass "any matter within the scope of discovery, including statements of opinion or of fact or of the applications of law to fact . . . ." TEX. R. CIV. P. 198.1; *see also Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011) (per curiam). If the opposing party does not serve its responses to the requested admissions within thirty days, the matters in the requests are deemed admitted against the party without the necessity of a court order. TEX. R. CIV. P. 198.2(c); *Marino*, 355 S.W.3d at 633. Any matter admitted or deemed admitted is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission.

*Empowerment Homes*, 2023 WL 6547898, at \*3 (citing TEX. R. CIV. P. 198.3; *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989)).

The Texas Supreme Court has held, under special circumstances, a party may bring a request to withdraw deemed admissions for the first time in a motion for new trial. *See Wheeler*, 157 S.W.3d at 442; *see also Marino*, 355 S.W.3d at 632–33 (holding trial court erred in denying pro se appellant opportunity to withdraw deemed admissions, despite never formally requesting withdrawal, because her "argument and pending motions" filed prior to rendition of summary judgment provided evidence of good cause and lack of prejudice). However, the supreme court has emphasized "the equitable principles allowing these arguments to be raised in a motion for new trial do not apply if a party realizes its mistake before judgment and has other avenues of relief available." *Wheeler*, 157 S.W.3d at 442 (citations omitted).

Here, the record indicates appellees served O'Donnell with their first requests for admissions on April 26, 2021, and that O'Donnell sent his response on the deadline date of May 26. On June 24, appellees filed a motion to compel, and on July 22, the trial court conducted a hearing at which appellees' counsel pointed out that O'Donnell had answered several requests "by saying he did not have enough information to do so" even where requests asked him to admit whether an attachment was a true copy of a document he had signed. O'Donnell, representing himself, stated he was in the process of obtaining new counsel. At the conclusion of the

–8–

hearing, the trial court informed O'Donnell that if his new counsel "wants to attack the order, he can certainly do so after I enter it." That same day, the trial court signed an order granting the motion to compel, ordering that thirty-six of appellees' requests for admissions be deemed admitted against O'Donnell.

On November 19, appellees moved for summary judgment against O'Donnell on their claims of violations of the TSA and breach of fiduciary duty, attaching as support several declarations and the deemed admissions. O'Donnell filed his response. The trial court held a hearing on the motion for summary judgment. O'Donnell does not assert, and the record does not imply, he asked to withdraw the deemed admissions in his response or at the hearing. Instead, he waited until the motion for new trial to request withdrawal of the deemed admissions. Thus, the equitable considerations that might permit a party to move post-judgment for withdrawal of deemed admissions are not present in this case. *See Empowerment Homes*, 2023 WL 6547898, at *4 (citing *Coker v. Comm'n for Law. Discipline*, No. 05-18-01411-CV, 2020 WL 2988635, at *5 (Tex. App.—Dallas June 4, 2020, no pet.) (mem. op.)). Accordingly, O'Donnell waived his right to challenge the deemed admissions for the first time in the motion for new trial. We conclude the trial court acted within its broad discretion by refusing to withdraw the deemed admissions and denying their request in the motion for new trial. *See id.* (citing *Sullivan v. Portable Storage of Minn. Inc.*, No. 04-16-00132-CV, 2017 WL 1161190, at *1–2 (Tex. App.—San Antonio Mar. 29, 2017, no pet.) (mem. op.)).

We overrule O'Donnell's fifth issue.

## II. *The Evidence Established O'Donnell is a "Seller" under the TSA*

In his first issue, O'Donnell urges the trial court erred in granting summary judgment on appellees' claim against him for violations of the TSA, arguing that "the evidence does not conclusively establish that O'Donnell is a 'seller' under the Texas Securities Act."

We review grants of summary judgment de novo. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id*. Additionally, "the party moving for summary judgment bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Id*. (quoting TEX. R. CIV. P. 166a(c)).

The burden then shifts to the non-movant to disprove or raise an issue of fact as to at least one of those elements. *See Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 252 (Tex. 2023) (citing *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014)). The non-movant has no burden to respond to or present evidence regarding the motion until the movant has carried its burden to conclusively establish the cause of action or defense on which its motion is based.

*See id.* (citing *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 292 (Tex. 2013)).

The TSA establishes both primary and secondary liability for securities violations. *See Sterling Tr. Co. v. Adderley*, 168 S.W.3d 835, 839 (Tex. 2005). Primary liability arises when a person "offers or sells a security . . . by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." *See id.* (quoting TEX. REV. CIV. STAT. art. 581–33A(2)).[3] Secondary liability is derivative liability for another person's securities violation; it can attach to either a control person, defined as "[a] person who directly or indirectly controls a seller, buyer, or issuer of a security," or to an aider, defined as one "who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security." *Id.* (quoting REV. CIV. art. 581–33F(1)–(2)).[4]

---

[3] In 2019, the Legislature repealed the TSA, which was previously codified beginning at TEX. REV. CIV. STAT. art. 581-1, and recodified it as Title 12 of the Texas Government Code. *See* TEX. GOVT. CODE § 4001.001 ("Historical and Statutory Notes"). Former Section 33(A)(2) is now codified at Section 4008.052 of the Government Code. *See id*. § 4008.052. The recodification of the TSA became effective on January 1, 2022. *See id*. § 4001.001 ("Historical and Statutory Notes"). Because the former version of the statute was in effect when appellees filed their petition, we will cite to that version in this opinion.

[4] Former Section 33(F) is now codified at Section 4008.052 of the Government Code. *See* GOVT. § 4008.055.

–11–

In his first issue, O'Donnell urges appellees failed to conclusively establish that he was a "seller" under the TSA.[5] O'Donnell points to his declaration attached to his response to appellees' motion for summary judgment, in which he denied soliciting investments from appellees in his individual capacity. In his declaration, O'Donnell denied that he acted in his individual capacity and referred to his signatures on the pertinent documents, which he signed as manager of Pepperwood II GP. O'Donnell cites federal decisions to argue that while an officer like himself might be a seller, appellees did not establish he passed title to them or that he was motivated by financial interest to sell securities to appellees. *See In re Ulta Salon, Cosmetics & Fragrance, Inc. Sec. Litig.*, 604 F. Supp. 2d 1188, 1193 (N.D. Ill. 2009) (holding that to state claim of violation of Securities Act, plaintiffs must allege relationship "where a defendant: (1) sells the security (i.e., passes title or other interest in the security to the buyer for value); or (2) successfully solicits the purchase of a security motivated at least in part by a desire to serve his own financial interest or those of the security owner"); *see also Pinter v. Dahl*, 486 U.S. 622, 642 (1988). He also cites *Sterling Trust Co. v. Adderley* for the proposition that the Texas Legislature intended the TSA to be interpreted in harmony with federal securities such that decisions of federal courts may be used to interpret the TSA. *See Sterling*, 168 S.W.3d at 840.

---

[5] In his third issue, he challenges whether the evidence conclusively establishes that he was a "control person" under the TSA.

Appellees respond that the definition of "seller" under the TSA imposes liability on a "person who offers or sells a security" and that "person" is broader than the company issuing the security but includes a corporation, a person, a company, and other business entities. While appellees rely on the current version of the TSA, the version in effect when this suit was filed similarly defined "person" and "company" to include "a corporation, person, joint stock company, partnership, limited partnership, association, company, firm, syndicate, trust, incorporated or unincorporated, heretofore or hereafter formed under the laws of this or any other state, country, sovereignty or political subdivision thereof, and shall include a government, or a political subdivision or agency thereof." *Compare* GOVT. § 4001.064 *with* REV. CIV. art. 581-4(B). Appellees agree that federal cases may be used to interpret the TSA and urge that "the range of persons potentially liable under [the federal securities act] is not limited to persons who pass title." *See Pinter*, 486 U.S. at 643. Appellees also point to evidence of O'Donnell's financial interest being the referral agreement, under which O'Donnell admitted his company Pepperwood I, LLC received a $5 million finder's fee.

In their motion for summary judgment, appellees asserted O'Donnell was liable as a seller because he offered and sold securities in Pepperwood II to them by means of an untrue statement or omission of material fact. Appellees urged that O'Donnell misrepresented in the partnership agreement (dated June 12, 2015), first amendment (dated November 19, 2015), and supplemental private placement

–13–

memorandum (dated September 2015) that appellees' investments would be used to acquire stock from the Davises in BRS when O'Donnell had already signed a sale agreement with the Davises for that same stock (dated July 28, 2015). As support for their motion, appellees relied on admissions by O'Donnell, signed and dated copies of the agreements and private placement memorandum, and declarations from each appellee.[6] And, as appellees argue, the summary-judgment evidence includes the referral fee pursuant to which Pepperwood I was paid $5 million for soliciting investors to purchase the Davises' stock, as well as O'Donnell's admissions that Pepperwood I received that fee under that agreement and that he signed the referral agreement as manager of Pepperwood I.

We conclude the foregoing is sufficient to establish O'Donnell was liable as a "seller" under the TSA because the evidence established O'Donnell "offer[ed] or [sold] a security . . . by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." *See* REV. CIV. art. 581–33A(2). In discussing who may be liable as a "seller" under the federal securities act, the Supreme Court held that liability extends to persons other than the

---

[6] Section 132.001 of the civil practice and remedies code provides for use of unsworn declarations in lieu of affidavits required by statute or rule. *See* TEX. CIV. PRAC. & REM. CODE § 132.001 (a), (c). Appellees' declarations were in writing and subscribed by declarant as true under penalty of perjury. *See Beonney v. U.S. Bank Nat'l Assoc.*, No. 05-15-01057-CV, 2016 WL 3902607, at *3 (Tex. App.—Dallas July 14, 2016, no pet.) (mem. op.) (holding in context of summary-judgment evidence that main requirements under section 132.001 are declaration be in writing and subscribed by declarant as true under penalty of perjury).

person who passes title, thus we conclude appellees need not have established O'Donnell passed any title. *See Pinter*, 486 U.S. at 643. As for O'Donnell's argument that appellees needed to have established his financial interest in the transaction, we note that the Supreme Court further held that liability under the federal securities act extends to a person "motivated at least in part by a desire to serve his own financial interest or those of the securities owner," *see id.* at 647, and that at least one Texas court has applied that requirement to "seller" under the TSA. *See Highland Cap. Mgmt., L.P. v. Ryder Scott Co.*, 402 S.W.3d 719, 742 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

Even assuming, without deciding, the TSA's definition of "seller" required evidence of O'Donnell's financial interest in this transaction, we conclude the foregoing evidence is sufficient. In *Pinter*, the Supreme Court discussed whether liability under the federal securities act should extend to brokers and others who solicit offers to purchase securities and concluded it should, noting that "[t]he solicitation of a buyer is perhaps the most critical stage of the selling transaction" and that "brokers and other solicitors are well positioned to control the flow of information to a potential purchaser . . . and, in fact, such persons are the participants in the selling transaction who most often disseminate material information to investors." *See Pinter*, 486 U.S. at 646. Thus, O'Donnell's arguments that any financial interest was that of an LLC of which he was a member and that he only

acted in an agent capacity on behalf of Pepperwood II GP and Pepperwood II are unavailing.

We overrule O'Donnell's first issue.

### III. The Record Contains No Genuine Issue of Material Fact as to Whether Appellees Knew about the Sale Agreement

In his second issue, O'Donnell urges a material fact exists regarding whether appellees knew of the sale agreement between the Davises and Pepperwood II. O'Donnell urges that he offered evidence contradicting appellees' declarations that he did in fact discuss the sale agreement with appellees in his capacity as an employee of Pepperwood II. Appellees respond that O'Donnell's declaration that he discussed the sale agreement with them does not create a material fact issue because that declaration does not address their allegation that he failed to disclose that he had already purchased the Davises' BRS stock and already had a controlling interest in BRS.

Primary liability under section 33C of the TSA is imposed on an issuer who registers securities for offer or sale "[i]f the prospectus required in connection with the registration contains, as of its effective date, an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading," unless the issuer "sustains the burden of proof that the buyer knew of the untruth or omission." *Morgan Keegan & Co., Inc. v. Purdue Ave. Inv'rs LP*, No. 05-15-00369-

CV, 2016 WL 2941266, at *4 (Tex. App.—Dallas May 18, 2016, pet. denied) (mem. op.) (quoting REV. CIV. art. 581–33C(1), (2)).

We agree with appellees that O'Donnell's statement that he discussed the sale agreement with appellees does not "sustain[] the burden of proof" that appellees knew the sale had already taken place or that Pepperwood II already had a controlling interest in BRS before investing in Pepperwood II.

We overrule O'Donnell's second issue.

## IV. *Whether the Evidence Established O'Donnell is a "Control Person" under the TSA*

In his third issue, O'Donnell contends appellees failed to conclusively establish that he is a "control person" under the TSA. He urges that the evidence only shows he signed a referral agent agreement between the Davises and Pepperwood I as manager of Pepperwood I and the sale agreement between the Davises and Pepperwood II as president of Pepperwood I and Pepperwood II GP. He argues that while his designation as manager or president might be relevant, it is not sufficient to establish that he is a control person. Appellees respond that while titles alone do not establish "control," such titles "coupled with an ability 'to prevent the [Securities Act] violation' can establish 'control.'" Appellees argue that O'Donnell was a control person because he knew of the referral and sale agreements and thus could have disclosed to appellees that the Davises had already sold their stock and that Pepperwood I would receive a referral fee, thereby preventing any violation of the TSA.

–17–

A person who directly or indirectly controls a seller, buyer, or issuer of a security is liable . . . jointly and severally with the seller, buyer, or issuer and to the same extent as the seller, buyer, or issuer. *See* TEX. REV. CIV. STAT. art. 581-33(F)(1). We use the same general definitions of control used under federal securities law. *Darocy v. Abildtrup*, 345 S.W.3d 129, 137 (Tex. App.—Dallas 2011, no pet.) (citing *Barnes v. SWS Fin. Servs.*, 97 S.W.3d 759, 763 (Tex. App.—Dallas, 2003, no pet.); *Frank v. Bear, Stearns & Co.,* 11 S.W.3d 380, 384 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)). "Control means the possession, direct or indirect, of the power to direct or cause the direction of the management or policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Id.* (quoting *Frank*, 11 S.W.3d at 384). "Federal courts construing control person liability have fashioned a two-prong test: that the defendant exercised control over the operations of the corporation in general, and that the defendant had the power to control the specific transaction or activity upon which the primary violation is predicated." *Id.* (quoting *Frank*, 11 S.W.3d at 384) (citing *Abbott v. Equity Group Inc.*, 2 F.3d 613, 620 (5th Cir.1993)). The injured investor is not required to show that the defendant participated in the alleged violation in order to establish control person liability. *Id.* (citing *Barnes*, 97 S.W.3d at 764) (applying *Frank* test to determine whether individual was control person under TSA). "Texas courts interpreting this requirement have held only that a major shareholder or

director is a 'control person' for purposes of the statute." *Id.* (quoting *Frank*, 11 S.W.3d at 384).

In addressing O'Donnell's first and second issues, we have already concluded appellees proffered sufficient summary-judgment evidence to support the conclusions that O'Donnell is primarily liable as a "seller" under the TSA. In his third issue, O'Donnell challenges whether appellees proffered sufficient evidence to support a finding that he is a "control person" under the TSA and therefore secondarily liable under the TSA. As mentioned above, the TSA establishes both primary and secondary liability for securities violations, and secondary liability is derivative liability for another person's securities violation, which can attach to a control person, defined as "[a] person who directly or indirectly controls a seller, buyer, or issuer of a security." *See Sterling Tr. Co. v. Adderley*, 168 S.W.3d 835, 839 (Tex. 2005) (quoting Rev. Civ. art. 581–33F(1)).

Given that "[a] person who directly or indirectly controls a seller, buyer, or issuer of a security is liable . . . jointly and severally with the seller, buyer, or issuer and to the same extent as the seller, buyer, or issuer," and in light of our conclusions resolving O'Donnell's first and second issues against him, we need not address his third issue. *See* Rev. Civ. art. 581-33(F)(1); Tex. R. App. P. 47.1, 47.4.

## V. *The Evidence Established O'Donnell Breached a Fiduciary Duty that He Personally Owed to Appellees*

In his fourth issue, O'Donnell argues appellees failed to establish he breached a fiduciary duty that he owed to appellees. O'Donnell concedes that a general

–19–

partner in a limited partnership like Pepperwood II owes fiduciary duties to limited partners and that as the general partner of Pepperwood II, Pepperwood II GP owed fiduciary duties to appellees. But, he urges that he—as managing member of Pepperwood II GP, a limited liability company—owed a fiduciary duty to Pepperwood II GP, but not to the limited partners of Pepperwood II.

Generally, the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). As the movants, appellees had to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c).

Two types of relationships give rise to fiduciary duties: formal and informal. *See Cardwell v. Gurley*, No. 05-09-01068-CV, 2018 WL 3454800, at *4 (Tex. App.—Dallas July 18, 2018, pet. denied) (mem. op.) (citing *Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005)). Fiduciary duties are owed as a matter of law in formal relationships, which include relationships between partners, principals and agents, and attorneys and clients. *See id.* (citing *Meyer*, 167 S.W.3d at 330; *McAfee, Inc. v. Agilysis, Inc.*, 316 S.W.3d 820, 829 (Tex. App.—Dallas 2010, no pet.)). An informal relationship also may give rise to a fiduciary duty when one person trusts and relies on another, whether the relationship is moral, social, domestic, or purely personal. *See id.* (citing *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*,

823 S.W.2d 591, 593–94 (Tex. 1992), *superseded by statute on other grounds as noted in Subaru of Am., Inc., v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002)).

As O'Donnell concedes, a general partner in a limited partnership owes fiduciary duties to the limited partners they serve because of its control over the entity. *See Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 479 (Tex. App.—Dallas 2010, no pet.). Here, Pepperwood II GP was the general partner of Pepperwood II and thus owed fiduciary duties to appellees as limited partners. Among his admissions attached as support for appellees' motion for summary judgment, are statements that O'Donnell was the president and manager Pepperwood II GP. We have previously held that applicable Texas statutes "presume the existence of fiduciary duties" owed by a manager or member of a limited liability company. *See Cardwell*, 2018 WL 3454800, at *5.

Moreover, we have held that when a third party knowingly participates in the breach of a fiduciary duty, the third party becomes a joint tortfeasor and is liable as such. *See Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App.—Dallas 2007, no pet.) (citing *Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 160 S.W.2d 509, 513–14 (Tex. 1942); *Brewer & Pritchard, P.C. v. Johnson,* 7 S.W.3d 862, 867 (Tex. App.—Houston [1st Dist.] 1999) *aff'd on other grounds*, 73 S.W.3d 193 (2002)). A claim that a defendant knowingly participated in a breach-of-fiduciary duty by a third party necessarily hinges on the existence of a fiduciary duty

owed by the third party to the plaintiff. *CBIF Ltd. P'ship v. TGI Friday's Inc.*, No. 05-15-00157-CV, 2017 WL 1455407, at *16 (Tex. App.—Dallas Apr. 21, 2017, pet. denied) (mem. op.) (citing *Cox Tex. Newspapers, L.P. v. Wooten*, 59 S.W.3d 717, 722 (Tex. App.—Austin 2001, pet. denied)). In addition to the existence of a fiduciary duty, the plaintiff must show the defendant knew of the fiduciary relationship and was aware of his participation in the third party's breach of its duty. *Id.* (citing *Wooten*, 59 S.W.3d at 722).

In support of their motion for summary judgment, appellees attached their declarations, which included their claims for O'Donnell's actions constituting either breach or knowing participation in breach of fiduciary duty. According to these declarations, after appellees agreed to invest and had become limited partners in Pepperwood II, O'Donnell caused Pepperwood II to transfer "all of BRS's patents and intellectual property rights to Omni." Those declarations further noted that BRS was then known as Giant Gray, Inc. In support of their declarations, appellees attached an assignment of intellectual property rights agreement dated February 1, 2017, whereby Pepperwood II assigned its intellectual property rights in Gray Giant to Omni, O'Donnell signed that agreement as manager of Pepperwood II GP and as president of Omni. The declarations went on to allege that O'Donnell informed appellees of the transfer of intellectual property rights and stated his intention to exchange their limited partnership interests in Pepperwood II for shares in Omni AI, Inc. According to all appellees' declarations, O'Donnell offered that they each sign

–22–

an exchange agreement, which would exchange the limited partner's respective interest for shares in Omni, or a withdrawal agreement, which would permit the limited partner to withdraw from Pepperwood II and receive a return of that partner's capital contribution plus ten percent within ninety days of the date of the withdrawal agreement. According to their declarations, neither RooInvestment nor Brunnemer signed either the exchange or withdrawal agreement and did not receive a return on or reimbursement of its or his investment. According to his declaration, Gregg signed the exchange agreement, consenting to exchange half of his investment in Pepperwood II for shares in Omni, and the withdrawal agreement, seeking the return of the remainder of his investment. Gregg declared he had not received a return on or reimbursement of his investment.

We conclude the foregoing is sufficient evidence that O'Donnell participated in a breach of duty. The record evidence establishes that he was aware of the fiduciary relationship between Pepperwood II GP and appellees. The evidence also establishes that O'Donnell signed the agreements that transferred the IP assets out of Pepperwood II to Omni, an entity he had some control over and only afterwards disclosed to appellees the transfer and offered to exchange their interests in Pepperwood II for shares in Omni, or else return their capital contribution with interest. As a general partner in a limited partnership, Pepperwood II GP owed fiduciary duties to the limited partners it served because of its control over Pepperwood II. *See Graham Mortg.*, 307 S.W.3d at 479. Such a fiduciary duty

–23–

includes a duty to disclose material facts. *See Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019).[7] Accordingly, we conclude appellees presented evidence establishing O'Donnell engaged in self-dealing and failed to disclose material information to appellees thereby participating in breaches of a fiduciary duty to appellees.

We overrule O'Donnell's fourth issue.

### CONCLUSION

We affirm the trial court's judgment.

/Nancy Kennedy/
NANCY KENNEDY
JUSTICE

230238F.P05

---

[7] And, even in the absence of a formal fiduciary relationship, there may also be a duty to disclose when the defendant: (1) discovered new information that made its earlier representation untrue or misleading; (2) made a partial disclosure that created a false impression; or (3) voluntarily disclosed some information, creating a duty to disclose the whole truth. *See Bombardier Aerospace Corp.*, 572 S.W.3d at 220. One of the arguments O'Donnell makes in support of this issue is that even if he personally owed any fiduciary duty, the acts and omissions appellees complained of all took place prior to when appellees became limited partners, such that he owed them no fiduciary duty at that time. Appellees' evidence regarding the transfers of intellectual property assets established those transfers and O'Donnell's delay in disclosing same took place after appellees became limited partners. The other acts and omissions that he refers to in his brief, that he failed to disclose that the Davises had already sold a controlling share of BRS stock and the existence of the referral agreement, all took place prior to appellees' becoming limited partners. In light of our conclusions regarding the evidence of asset transfers, we need not address whether O'Donnell breached any fiduciary duty or duty to disclose by failing to disclose that the BRS stock had already been sold or the existence of the referral agreement. *See* TEX. R. APP. P. 47.1, 47.4.

–24–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL J. O'DONNELL,
Appellant

No. 05-23-00238-CV V.

ROO INVESTMENT FUND II,
LLC, BRENT BRUNNEMER, AND
MITCHELL ALLEN GREG, M.D.,
Appellees

On Appeal from the 95th District
Court, Dallas County, Texas
Trial Court Cause No. DC-20-17362.
Opinion delivered by Justice
Kennedy. Justices Nowell and Miskel
participating.

In accordance with this Court's opinion of this date, the judgment of the trial
court is **AFFIRMED**.

It is **ORDERED** that appellees ROO INVESTMENT FUND II, LLC,
BRENT BRUNNEMER, AND MITCHELL ALLEN GREG, M.D. recover their
costs of this appeal from appellant MICHAEL J. O'DONNELL.

Judgment entered this 7th day of February 2024.

–25–